**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**NATIONAL LEAD COMPANY, a Corporation, and Chemical Workers' Basic Union Local 1744, AFL–CIO, Defendants-Appellees.**

No. 20427.

United States Court of Appeals,
Eighth Circuit.

Feb. 26, 1971.

Jerris Leonard, Asst. Atty. Gen., Daniel Bartlett, Jr., U. S. Atty., David L. Rose, Stuart P. Herman, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Edward Weakley, Howard Elliott, Boyle, Priest, Elliott & Weakley, St. Louis, Mo., for National Lead Co.

Harry Moline, Jr., Thomas, Busse, Cullen, Clooney, Weil & King, St. Louis, Mo., for Chemical Workers' Basic Union, Local 1744, AFL–CIO.

Before GIBSON and BRIGHT, Circuit Judges, and McMANUS, Chief District Judge.

BRIGHT, Circuit Judge.

The United States by its Attorney General brings this action seeking in-

junctive relief against the defendants pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[1] In its complaint, the government asserts that the defendants, National Lead Company (National Lead) and Chemical Workers' Basic Union Local 1744, AFL–CIO (Local 1744), discriminate in their employment policies and practices against blacks who work in or seek employment at National Lead's St. Louis, Missouri, plant. The government initially moved for a preliminary injunction. The district court, following a hearing, denied the motion, 315 F.Supp. 912, and the government appeals. On appeal, the government urges the following contentions as grounds for reversal:

(1) The plaintiff established a prima facie case that National Lead's seniority system operates to discriminate against blacks seeking promotion or job transfers within the plant and that such a showing entitled the government to immediate relief by way of a preliminary injunction;

(2) The district court erred in finding National Lead free of racial discrimination in the selection of plant foremen; and

(3) The district court erred in denying relief from National Lead's discriminatory employment practices in hiring guards and clerical personnel, since the union representing National Lead employees in these classifications had not been joined as a party to the litigation.

We consider each of these issues mindful of the fact that the case comes to us on appeal from a preliminary ruling by the district court and not following a full trial on the merits. We turn to a discussion of each issue.

### THE EXISTING SENIORITY SYSTEM

Defendant National Lead operates and maintains a plant in St. Louis, Missouri, known as its Titanium Pigment Division. Defendant Local 1744 represents all production and maintenance employees at National Lead's St. Louis plant. National Lead employs about 1,100 production workers there, including 254 non-whites. These employees work in one of six departments: Titanium, Acid, Water & Power, Stores, Mechanical, and Labor. Prior to 1962, National Lead assigned only blacks to the Labor department and did not permit Labor department employees to transfer to any other department.

The collective bargaining agreement between National Lead and Local 1744 creates a dual system of seniority. Seniority based upon length of service in a particular department (departmental seniority) governs bidding on vacant jobs within that department. Seniority based upon length of service with National Lead (plant-wide seniority) determines lay-off, demotion, transfer to other departments and reassignment. When a vacancy occurs in any department, the job is first open to bids within that department. The company maintains no line of progression for promotion within a department and the employee with greatest seniority who bids upon that job will be entitled to fill the vacancy. If no bid is received from within that department, or if the depart-

---

1. 42 U.S.C. § 2000e–6(a) provides:

"(a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described."

mental bids create vacancies, the employees from other departments can bid on the job and the job is awarded on the basis of plant-wide seniority.

When an employee changes departments, he cannot transfer his accumulated departmental seniority to the new department. Thus, the transferred employee will be junior in seniority to those employees already working within that department. Should a force reduction occur, the transferred employee will lose his position in his new department before any other employee possessing greater departmental seniority. Plant-wide seniority, however, affords some protection to that employee. Upon the force reduction, the employee returns to his former department. There he must take whatever job is available until a vacancy occurs when he may then exercise his previously accrued high seniority rating within his original department.

In March, 1963, National Lead and Local 1744 modified the existing collective bargaining agreement to provide that Labor department employees could bid for a job in the Mechanical department and, after working there for one year, bid on job vacancies in any other department. Employees in the other five departments had already possessed this privilege of inter-departmental bidding. Appellees changed the collective bargaining agreement again in 1969 to permit any employee hired prior to March 13, 1963, to bid on any job opening in any department without first going through the Mechanical department. This right of transfer to bid on jobs in other departments applies only after the employees within that department have relinquished their preference to first bid for the vacant jobs within that department.

The government argues that the present seniority system capitalizes upon the pre-1963 discrimination which locked blacks into the Labor department. The plaintiff-government argues that these employees were thus deprived of the opportunity to acquire seniority in any other department. It alleges that this discrimination carries over to the present, with only the least desirable job openings available to them on transfer, and that they further acquire inferior seniority to white employees who have not been subjected to these discriminatory practices.

We think the case, in its present posture, raises an inference that the current seniority provisions operate to perpetuate the discriminatory effects of pre-1963 discrimination, although the impact of said discrimination is difficult to ascertain. The law is well established that employment policies which appear racially neutral but build upon pre-Title VII bias to produce present discrimination are actionable under Title VII. Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 427 (8th Cir. 1970); United States v. Sheet Metal Workers Local 36, AFL–CIO, 416 F.2d 123, 131 (8th Cir. 1969). See also, United States v. Dillon Supply Company, 429 F.2d 800, 803 (4th Cir. 1970); Local 189, Papermakers and Paperworkers, AFL–CIO v. United States, 416 F.2d 980, 989 (5th Cir. 1969); United States v. Bethlehem Steel Corp., 312 F.Supp. 977, 992 (W.D. N.Y.1970); Quarles v. Philip Morris, Incorporated, 279 F.Supp. 505, 518 (E. D.Va.1968).

The government urges that the presentation of these facts establishes a violation of the statute and thus furnishes an adequate basis to require the district court to grant a preliminary injunction. Appellant-government relies principally upon the Fifth Circuit's decision in United States v. Hayes International Corporation, 415 F.2d 1038 (5th Cir. 1969). There, Judge Tuttle, speaking for the court, said:

> [W]here an employer has engaged in a pattern and practice of discrimination on account of race, etc., in order to insure the *full* enjoyment of the rights protected by Title VII of the 1964 Civil Rights Act, affirmative and mandatory preliminary relief is required. [415 F.2d at 1045]

The court further declared:

> We take the position that in such a case, irreparable injury should be presumed from the very fact that the statute has been violated. Whenever a qualified Negro employee is discriminatorily denied a chance to fill a position for which he is qualified and has the seniority to obtain, he suffers irreparable injury and so does the labor force of the country as a whole. [*Id.*]

Although, on the present record, some of the vestiges of past discrimination seem preserved in National Lead's transfer and promotion procedures, the actual impact of this discrimination upon black employees possessing pre-1963 seniority is unclear. Many of these employees have acquired, through their departmental seniority, positions possessing substantial advantages in pay rates, working hours and conditions as compared to positions in other departments. On the other hand, others claim to suffer from the existing seniority system.[2] On the existing record, however, we cannot say that the existence of remnants of pre-1963 discrimination within the plant calls for complete abolition of departmental seniority or some merging arrangement of the Labor department into other departments, as has been suggested by the government[3] or some other less drastic alteration of the existing job transfer system.

The government failed to persuade the district court to adopt its proposed remedy to obviate discrimination. Any relief afforded in this case will likely cause some disruption in the seniority system. The trial court, in fashioning a remedy, needs to consider rights which other employees have acquired over the years, but not those acquired at the expense of the black employees. Congress has recognized the importance of seniority rights in enacting Section 703(h) of Title VII[4] and sought to protect valid

2. The impact of continued use of departmental seniority is illustrated by the history of Bennie Tatum, a high school graduate who was assigned to the Labor department based on his race when hired at National Lead in 1950. He attempted to move up to the Mechanical department in 1964. He was bumped back to Labor four different times between 1964 and 1966 due to his lack of Mechanical department seniority. After the fourth occasion in July, 1966, Mr. Tatum was unable to get back into the Mechanical department until February, 1969.

3. Before the district court, plaintiff urged that plant-wide seniority should prevail in all department lines and for all purposes. As noted by the trial court, in its memorandum opinion, the following change in job transference would occur:

"Thus, if a vacancy occurs in the Titanium Department and two bids are received—one from an employee in Labor with twenty-five years' seniority in the Labor Department, and one from an employee in the Titanium Department with twenty-four years' seniority in Titanium—the employee in Labor is presumed to be qualified and would be awarded the job based on his greater seniority. The plaintiff contends that the Company is then required to give the transferring employee whatever training is necessary to qualify him for the job. (Plaintiff concedes that if after a reasonable amount of training the transferring employee does not become qualified, he need not be retained in the job.)"

The government articulates a somewhat different view before this court:

"We believe that it would be appropriate for this court to remand with instructions that the district court enter a preliminary decree which would merge the Labor Department seniority group jobs into the formerly white departments to which they are functionally or geographically related, with their total plant seniority (time worked at the plant) converted to that of the department where the individuals are currently functioning." Brief for Appellant at 42.

4. "Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, * * * provided that

nondiscriminatory seniority systems. In this case, in light of the trial court's implicit finding that the alleged discriminatory practices were not in fact presently oppressive, we think any adjustment of seniority rights should await a full hearing on the merits. See *Sheet Metal Workers, Local 36, AFL–CIO, supra*, 416 F.2d 123.

■ Section 706(g) of the Act (42 U.S.C. § 2000e–5(g) ), which empowers a United States district court to "enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate", vests the district court with a large measure of discretion in modeling a decree to insure compliance with the Act. Local 53 of Int. Ass'n of Heat & Frost Insulators and Asbestos Workers v. Vogler, 407 F.2d 1047, 1052 (5th Cir. 1969). The policy of the Act is not fulfilled by a showing that black employees may enjoy substantially equal pay with others in similar capacities. The test is whether all employees possess an equal opportunity to fully enjoy all employment rights. *Hayes International Corporation, supra*, 415 F.2d at 1043.

■ Where, as here, an appropriate solution is not readily apparent from the partial development of the facts, we do not think it error for the trial court to deny relief by way of a preliminary injunction. See E. W. Bliss Co. v. Struthers-Dunn, Inc., 408 F.2d 1108, 1113 (8th Cir. 1969); Baggett Transp. Co. v. Hughes Transp., Inc., 393 F.2d 710, 714 (8th Cir.), cert. denied, 393 U.S. 936, 89 S.Ct. 297, 21 L.Ed.2d 272 (1968); Hornback v. Brotherhood of R. R. Signalmen, 346 F.2d 161 (6th Cir. 1965); Young v. Motion Picture Ass'n of America, Inc., 112 U.S.App.D.C. 35, 299 F.2d 119, cert. denied, 370 U.S. 922, 82 S.Ct. 1565, 8 L. Ed.2d 504 (1962).

such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national ori-

## SELECTION OF FOREMEN

Statistical evidence introduced by the appellant discloses that only three of National Lead's 97 foremen are black. In addition to this evidence, plaintiff offered a letter written by National Lead in January of 1967 giving a list of 32 black employees whom National Lead believed "would be capable of becoming qualified for promotion * * * after reasonable training." As of November, 1969, none had been transferred to a supervisory position. The district court considered this evidence inconclusive to show that National Lead discriminated against blacks in the selection of plant foremen. This difficult question goes to the merits of the controversy. We think it appropriate that its resolution await the development of a full record.

## PLANT GUARDS AND CLERICAL EMPLOYEES

■ Plaintiff contends that the employer discriminates in its hiring practices, and points particularly to an alleged failure to hire blacks as plant guards and clerical employees. We note initially that the government asked the district court to award immediate injunctive relief to prevent any alleged discrimination against blacks in the filling of two vacancies for plant guards. The evidence, however, disclosed that since 1962 blacks had filled three of six vacancies for guard positions and that National Lead plans no immediate expansion of the present guard force or filling of any of the existing vacancies. The trial court, properly we think, determined that plaintiff failed to show any need for preliminary injunction relating to this employee category.

Accordingly, we affirm the trial court's order denying temporary relief. We remand this case for further proceedings on the merits.