Thelma BOWE et al., Plaintiffs,

v.

COLGATE, PALMOLIVE COMPANY
et al., Defendants.

Appeal of Georgianna SELLERS et al.,
Appellants.

No. 72–1343.

United States Court of Appeals,
Seventh Circuit.

Argued April 6, 1973.

Decided Nov. 28, 1973.

Sylvia S. Ellison, Caruthers G. Berger, Washington, D.C., for appellant.

Thomas C. Galligan, New York City, Jerry Anker, Washington, D. C., Herbert L. Segal, Hubert T. Willis, Louisville, Ky., John O. Moss, Indianapolis, Ind., Marion W. Garnett, Chicago, Ill., for appellee.

Before FAIRCHILD, STEVENS and SPRECHER, Circuit Judges.

FAIRCHILD, Circuit Judge.

This case involves job restrictions and a seniority system at the Jeffersonville plant of Colgate-Palmolive Company which produced results discriminatory against female employees. Many of the relevant facts appear in the 1967 decision of the district court, Bowe v. Colgate-Palmolive Company, 272 F.Supp. 332 (S.D.Ind., 1967). The district court found that discrimination had occurred and awarded damages to twelve plaintiffs whose claims it considered properly before it.

On appeal, this court expanded the class entitled to pecuniary recovery, and decided, contrary to the district court, that Colgate's exclusion of women, but not men, from jobs requiring the lifting of more than 35 pounds was unlawful. The cause was remanded with directions to grant such injunctive relief as may be required to eliminate the discriminatory system and any residual effect. Those discriminatorily laid off were to be compensated and the district court was directed to ascertain the feasibility of computing the damage to those who, while not laid off, were denied the opportunity to bid on higher paying jobs. Bowe v. Colgate-Palmolive Company, 416 F.2d 711 (7th Cir., 1969).

On remand, the district court, on February 25, 1970, issued a preliminary injunction which, among other things, opened all jobs without discrimination on the basis of sex. The ultimate judgment appears in an order dated May 7, 1971, as modified February 21, 1972. It required adjustments in seniority of 17 female employees, required certain options to be given to all female employees, and awarded recovery of money to 54. Plaintiff Georgianna Sellers and others have appealed, claiming that the seniority adjustments and job-assignment options were inadequate to eliminate the residual effects of the past discriminatory systems, and that the back-pay awards did not reasonably represent the difference between the amount earned by the women and the amount they would have earned had no discrimination been practiced.

■ Some members of the class appear to have been satisfied with the relief granted, although Sellers and others were not. Originally all named plaintiffs were represented by a single attorney, and sought relief for themselves and all the approximately 160 females employed at the plant. On the first appeal the named plaintiffs were divided into two groups, the Bowe group and the Sellers group, each employing its own counsel, but asserting the same legal positions. On remand, the two groups took somewhat different stands as to the appropriate remedies, and the Bowe group did not appeal from the new judgment. Their brief as appellees defended the injunctive relief granted, but not the back pay relief. It has not been expressly determined which members of the class, other than the named plaintiffs, are to be represented by either group. Although there are doubtless

differences in facts relevant to individual cases which produced the division among named plaintiffs, referred to, they are not clear cut, and sub-classes were never formally defined. No one has argued that if relief be gained by this appeal, the named plaintiff-appellees in the Bowe group, or others of the class who may have supported their position, should be excluded from its benefits. Under all the circumstances it seems fair not to exclude any of them.

As will appear, we conclude that the portion of the judgment granting injunctional relief should be affirmed without modification, but that the back-pay relief granted does not adequately compensate all members of the class for past discrimination.

The seniority system, weekly job assignment system, and the restrictions making many jobs unavailable to women are described in the 1967 district court decision, 272 F.Supp. at 340 to 347. Unnecessary repetition will be avoided here.

Before the 1966 changes in the collective bargaining agreement, the so-called general labor jobs were reserved for men; finishing labor jobs for women. Only four of the seventeen departments contained jobs reserved for women. The majority of women were employed in TAF, the Toilet Articles Finishing Department. The highest rate for a finishing labor job was the same as the lowest rate for a general labor job. Thus women were confined to the work where the pay was, for the most part, lower than that for men.

During the same period, separate seniority rosters were maintained for men and women. It could happen that an employee of either sex might be forced out of the department where seniority was being gained, or be laid off, when employees of the other sex, with less seniority were not, but for various reasons this occurred more often to women than to men.

In April, 1966, the collective bargaining agreement was changed. The separate seniority rosters for men and women were combined and the designations of jobs as male or female were eliminated. Colgate, however, imposed the 35 pound lifting limitation, so that in practical effect, although all jobs were open to men, the better paying jobs which had previously been reserved for men remained, for the most part, closed to women.

After the first appeal, all jobs were opened to women, beginning in March, 1970. Because, however, the seniority rules would require that a new entrant in any department would start last on the list in the weekly competition for jobs, women employees largely remained in the departments where they had previously worked.

### Seniority Remedies Ordered by the District Court.

The judgment contained, for the purpose of eliminating remaining disadvantages as a result of past discrimination, the following components:

1. *Adjustments in seniority.* A layoff in 1963 lasted more than one year and caused a number of women employees to lose seniority. The court ordered previously existing departmental, and in some cases, date-of-employment seniority restored to fourteen. The 1963 layoff was the last one before the effective date of Title VII which caused a loss of seniority as a result of discrimination. The court deemed it impractical to determine whether any earlier layoffs were discriminatory or to ascertain which employees would currently have more or less seniority if there had been no discrimination. Three additional women, who had lost seniority as a result of the 1963 layoff, had been laid off again in 1965, and had not been recalled, were re-entered at the bottom of the recall list and ordered to be given five years date-of-employment seniority if eventually recalled.

2. *Option to transfer to new Home department.* Each female employee was permitted to enter a new department of her choice where she would be given de-

partmental seniority equal to her seniority in the department she was leaving. Colgate was required to set up an "exposure program" whereby women would be given an opportunity to visit and observe operations of the various departments, examine job descriptions, and be formally instructed in the nature of the work. Employees were to be paid for time spent in the program including overtime rates for overtime. The transfer option had to be exercised within sixty days after completion of the program. Within sixty days after transfer, the employee could return to her former department and re-assert her position there.

3. *Option to select secondary department.* Each female employee was permitted, within sixty days after the completion of the program, to select a secondary department, in which she would, for one year, have department seniority of July 2, 1965, the effective date of Title VII, or her date-of-employment seniority, if less. Accordingly, if she were forced out of a department within one year, she could bid on jobs in her secondary department with 1965 seniority. This device was intended to establish parity with those men who had seniority in a secondary department as a result of involuntary transfers within one year.

*Contentions of the Appellants with Respect to Seniority.*

Appellants contend that the adjustments and options granted were insufficient to eliminate the residual effects of past discrimination. They argue that rights under Title VII can not be compromised or bargained away, and that the district court had merely approved a "package deal," agreed to by some members of the class. They contend that as a matter of law full relief to all members of the class demands the substitution of a seniority system based solely on date-of-employment seniority.

Whether or not compromise settlements are an acceptable basis for granting relief under Title VII is not at issue in the present case. Although confer-

ences were held and the record shows much talk among court and counsel concerning possible settlement and give and take compromise, it is clear that agreement was not attained and the court carried out the process of decision.

 It happens that much of the factual material before the court was not developed in evidentiary hearing, but was, as the judge noted, "presented through the uncontradicted statements of counsel in on-the-record conferences with the Court." All parties signed a stipulation "that an evidentiary hearing is unnecessary to complete the record in this case." Except for such qualification as may result from the agreed manner of procedure just referred to, the judgment of the district court is to be tested for factual support, consistency with legal principles, and confinement within the scope of discretion in the usual way.

 Appellants rely on the principle, with which all parties and the district court agree, that Title VII proscribes practices which are neutral on their face, and even in intent, if they perpetuate the effects of past discrimination. Griggs v. Duke Power Co., 401 U.S. 424, 430, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); Local 189, United Papermak. & Paperwork. v. United States, 416 F.2d 980, 988 (5th Cir., 1969); United States v. Bethlehem Steel Corporation, 446 F.2d 652, 659 (2d Cir., 1971); Robinson v. Lorillard Corporation, 444 F.2d 791, 795 (4th Cir., 1971); United States v. Jacksonville Terminal Company, 451 F.2d 418, 443 (5th Cir., 1971); Head v. Timken Roller Bearing Company, 486 F.2d 870, (6th Cir., 1973). Reliance on departmental seniority for job assignment, as practiced at the Jeffersonville plant is neutral on its face. The key issue is whether the transfer and secondary department options adequately relieve the system of the tendency it would otherwise have of perpetuating the results of job restrictions discriminatory against female employees. The district court considered the options adequate and chose to preserve the system because scrapping it "would upset the

rights, expectations, and seniority rank of every employee in the plant, male and female. . . . A majority of the employees in the plant [apparently both male and female] have voted against the adoption of a plant seniority system."

■ It appears that any tendency of the departmental seniority system to perpetuate previous discrimination arose from the concentration of women in departments where there were relatively few of the better paying jobs for which to compete. We conclude that the transfer option was an adequate equalizing remedy on this score, and the secondary department option corrected any imbalance in the enjoyment of seniority in a secondary department, surviving from past discrimination.

■ The factual complexity of industrial employment systems makes generalizations from the decided cases very dubious, and each situation must be considered separately. We note, however, the conclusion in other cases that Title VII does not necessarily require more than one bona fide opportunity to transfer to one's rightful place without loss of seniority. United States v. Hayes International Corporation, 456 F.2d 112, 119 (5th Cir., 1972); United States v. Jacksonville Terminal Company, *supra*, 451 F.2d at 458–459; United States v. Bethlehem Steel Corporation, *supra*, 446 F.2d at 666.

■ We think the district court could reasonably set sixty days as the period within which the transfer option could be exercised. Jobs at Colgate are assigned each week. Considerations applicable where assignments are permanent, and vacancies infrequent, do not apply to this case. The period began at the close of the exposure program, designed to make choice of department as meaningful as possible, and tending to lessen the effect of any ingrained psychological impediments discouraging exercise of the option.

■ Appellants contend that the 1965 seniority which a female employee was granted in the secondary department chosen by her failed to equalize the position of female and male employees. Most of the male employees, however, who enjoy seniority in more than one department have less seniority than the 1965 date chosen by the court. Only 10% of the male employees have seniority in more than one department. We are unable to say that this provision was inadequate.

Appellants also contend that as a result of past layoffs and transfers which reflect discrimination, female employees have less seniority in their department, and that this will put them at a continuing disadvantage. They argue that the use of date-of-employment seniority for all purposes is therefore necessary.

■ It is clear to all, as found by the district court, that it would be impossible to reconstruct the employment history of each employee as if no discrimination existed, and to determine in all instances whether a female employee would have been better or worse off vis-á-vis male employees. In each of the numerous instances of layoff or involuntary transfer, not only would it have to be shown that junior employees were retained, but the effect on the subsequent work history of the individual would have to be ascertained. Considerations other than pay differential doubtless often affected job preference at the time of weekly assignments. Any determination could only rest on speculation.

The district court has, however, taken account of the problem and attempted to make corrections in the seniority status of women where the determination was feasible. Restoration of seniority was ordered for fourteen women who lost as much as eleven years of seniority in a layoff occurring in 1963, the last major layoff causing a loss of seniority as a result of discrimination.

The impossibility of reconstructing "true" seniority for all employees, does not, we think, necessitate conversion of the entire system to date-of-employment seniority, as sought by appellants. Both men and women have widely disparate

departmental and date-of-employment seniority as a result of past layoffs and transfers. Some of the disparity for both doubtless reflects the operation of the discriminatory element of the former system; some results solely from the operation of the collective bargaining contract without regard to sex.

 A primary purpose of relief from residual effects of past discrimination, accorded to minority workers in other Title VII actions, has been to insure that they do not continue to be locked out of previously restricted jobs or departments. There is evident no inherent reason why this purpose is better served by a carryover of date-of-employment rather than departmental seniority. · If date-of-employment seniority were to be required in the present case, it would be superimposed on over twenty years of gains and losses in departmental status of both males and females often reflecting no discrimination. In framing a remedy it is appropriate to recognize the value of individual expectations not based on advantages derived from past discrimination. See United States v. National Lead Company, 438 F.2d 935, 938 (8th Cir., 1971).

Given the alternatives available to the district court, the impossibility of a perfect solution, and the propriety of attempting to minimize damage to interests not in themselves built upon discrimination, we find no abuse of discretion in selection of remedies.

### Back Pay Award.

The district court awarded money judgments for back pay in favor of 54 women. 31 were allowed compensation for a period of layoff in 1965, following the effective date of Title VII; 32 awards represented a differential between the amount received as wages for time worked since the effective date and the amount which would have been earned had the system not been discriminatory.

In each case the problem was to determine in some reasonable fashion "the highest rate of pay for such jobs as [the employee] would have bid on and qualified for if a non-discriminatory seniority scheme would have been in existence." 416 F.2d at 721. As already observed, exact reconstruction of the work history of each employee had the system contained no discriminatory element is impossible. The district court chose a test period so as to determine on the basis of experience the jobs each employee would have performed in the absence of discrimination. The period selected was from March 9, 1970 through May 31, 1970, the twelve weeks beginning shortly after the preliminary injunction opening all jobs to women.

Women who obtained the better paid general labor jobs during the test period were awarded the difference between their actual pay for time since July 2, 1965 and an amount computed for the same period on the basis of their individual hourly rate during the test period, less adjustments for contractual increases. They did not, however, receive an upward adjustment in vacation or sick pay, or in the Christmas bonus.

All women who had been laid off in 1965, while men junior to them were retained, received an allowance for that period. Those who did not obtain general labor jobs during the test period, or who had ceased to be employed at Colgate, were paid at the higher of the two finishing labor rates.

We conclude that there were several deficiencies in the method used by the court to compute the amounts of and entitlement to back pay.

 A principal deficiency is the selection of the test period. To be valid, the period must be one in which both current and residual discrimination was no longer in operation. It was only a week earlier that the preliminary injunction ordered Colgate to permit women to bid on all jobs. Because the seniority system required women to start as new employees in a new department, the segregation of women within a few departments remained frozen. While a

woman could bid on the heavier and better paying jobs in her department, she was unable successfully to bid on those jobs in a different department. In TAF, where most of the women were employed, there were few general labor jobs available. The needs recognized by the court in providing the transfer and secondary department options were present, but those options were not yet available. The test period was therefore not representative for the purpose of determining the jobs in which female employees would have been employed had there been no discrimination in the system.

There were other deficiencies in the procedure for making the awards. Some members of the class who had worked for substantial periods after the effective date of Title VII, and thus been exposed to the discriminatory elements of the system, had resigned or retired before the test period. No differential allowance was made to them on the basis of comparability to others who did have experience in the test period, or on the basis of the average of those who had such experience, or otherwise. Leaving them out implies a presumption that they suffered no loss as a result of discrimination, and we think that to the extent any presumption is to be applied, it must be the opposite. Similarly the award of layoff back pay, based on the highest finishing labor rate, to women who were not employed during the test period implies an unwarranted presumption that they would not have chosen better paying jobs if they had had the opportunity.

There were others, still on the payroll, whose experience during the test period was, on account of illness or some other demonstrable reason, not fairly representative. In some instances aging between the effective date of Title VII and the test period may have been a substantial and reasonably demonstrable factor, since the opportunity for an employee to improve her earnings depended on her willingness to do heavier work. Colgate has really offered no justification for lack of adjustment for these factors, or for the failure to allow for the difference between vacation, sick pay, and bonus actually paid on the basis of the earnings received and those items if computed on the basis of test period earnings.

We conclude that there must be a new computation of both differential and layoff back pay awards. Appellants would apparently prefer an allowance based on the average earning rate of all male employees during the appropriate periods. Such an average, however, would reflect an assumption that the female employees would have chosen and been qualified to perform the heaviest jobs as often and to the same extent as male employees. Apparently there are jobs as to which that assumption would be inaccurate. It is claimed, also, that there are some jobs requiring technical skills that few or none of the female employees possessed. The record would not support a decision that the members of the class would be entitled as a matter of right to a computation based on average earning rate of men, just referred to.

Assuming, as is entirely probable, that experience during a test period is the best available basis for determination of what members of the class would have earned in the absence of discrimination, a new test period should be selected and used. The period should begin a reasonable time after the exercise of all transfer and secondary department options. It should be reasonably representative of plant operations. Members of the class should not be excluded from relief because they did not happen to be employed during the test period. In instances where the experience during the test period was not representative for some employee, adjustments should be made. Vacation, sick pay, and bonus should also be appropriately adjusted. Where resort to presumption is deemed necessary, the presumption should be in favor of the member of the class. Each class member should be allowed differen-

tial back pay for all time she worked from the effective date of Title VII until the beginning of the new test period.

The determination of damages for injury can rarely be exact. We are confident that in those instances where the district court finds that experience in the test period does not provide a reasonable and fair basis for an award, the court can devise a method for making a fair and reasonable approximation of the money loss for each individual, with a foundation as adequate as the law requires for an award of damages.

*The 23 Uncompensated Class Members.*

There were 23 women employed in TAF, hired in 1964, laid off in the spring of 1965, never called back to work, for whom no relief of any kind was ordered. As of July 2, 1965, the effective date of Title VII, and for a period thereafter, they had the right to be recalled before others were newly hired to fill jobs for which they were qualified.

The contentions concerning this group have not been made entirely clear. It has not been shown that the layoff of these women was the result of the discriminatory elements of the system. It is conceded that three new male employees were hired June 21, July 19, and August 30, 1965. Colgate asserts that two were first class electricians and one a first class sheet metal mechanic, all qualified by tests in their craft. Appellants failed to contradict the assertion or to support in any way the claim that the hiring of the new male employees violated seniority rights of the women or was discriminatory.

The present record does not support reversal as to these women, and if no remand were required for other reasons, that would end the matter. If, however, in the course of proceedings on remand for recomputation of back pay relief, appellants are able to demonstrate to the satisfaction of the district court that the interests of justice require further consideration of the facts as to any in this group, we leave the district court free

to proceed with such inquiry, and to grant pecuniary or injunctive relief, or both, accordingly.

*Conclusion.*

We conclude that the district court has provided relief which is adequate to prevent continuation of the discriminatory practices dealt with in this case.

Back pay relief must be recomputed, but since Colgate did not cross-appeal, there is to be no reduction of the award previously made to any individual.

Insofar as the district court refused to grant any or greater back pay relief to any member of the class, the judgment appealed from is reversed and the cause remanded for further proceedings consistent with this opinion. In all other respects the judgment is affirmed.

Each party shall bear own costs.