Mary Lou WELLS et al.

v.

FRONTIER AIRLINES et al.

No. CA–3–74–369–B.

United States District Court,
N. D. Texas,
Dallas Division.

Sept. 3, 1974.

Thomas H. Dixon of Johnston & Dixon, Dallas, Tex., for plaintiff.

James E. Hautzinger, Edward W. Nottingham, Denver, Colo., Gardere, Porter & DeHay, Dallas, Tex., Wyatt Johnson, Coral Gables, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HUGHES, District Judge.

Plaintiff, Mary Lou Wells, hereinafter referred to as Wells, individually and on behalf of others similarly situated brought this action against defendants, Frontier Airlines, Inc., hereinafter referred to as Frontier, and Airline Employees Association International Union, hereinafter referred to as Union, alleging deprivation of equal employment opportunities. Declaratory and injunctive relief as well as back pay are sought. The case was heard on August 27, 1974. After considering the pleadings, the evidence, exhibits, briefs and argument of counsel the Court makes the following Findings and Conclusions:

### Findings of Fact

1. This Court has jurisdiction under the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(g).

2. Plaintiff Wells is a female employee of Frontier and is a member of the Union. At all times at issue Wells was an employee within the meaning of 42 U.S.C. § 2000e(f). Frontier is a corporation, having a place of business in Dallas County, Texas, and is engaged in the business of air transport of passengers and freight. It is an employer within the meaning of 42 U.S.C. § 2000e(b). Defendant Union is a labor organization representing employees of Frontier and exists for the purpose of dealing with employees concerning terms of employment. It is a labor organization within the meaning of 42 U.S.C. § 2000e(d) and (e).

3. The employees of Frontier represented by Union belong to one of fifteen seniority groups, designated Group A through Group O inclusive. The Group to which Wells at all times relevant hereto belonged is Group D and consists of ticket counter agents and ground customer representatives. Group E consists of station managers and station agents.

4. All females presently employed or who may in the future be employed by Frontier as ticket counter agents and are in Group D are similarly situated and can be fairly and adequately represented by plaintiff Wells.

5. Prior to July 1, 1973, Frontier maintained a seniority-transfer system which provided for the loss of employees group seniority for all employees if one transferred outside his or her employee seniority group. He commenced to accrue group seniority in his new group effective with the date of his transfer.

6. The collective bargaining agreement entered into by defendants and which went into effect July 1, 1973, con-

tinued to have the same impact on all inter-employee group transfers with the exception of employees groups D and E. Under this agreement which is presently in effect, Section 15(i)(1) employees in groups D and E may bid for vacancies in the other group, without a loss of group seniority, group seniority being transferable between employee groups D and E. This provision of the agreement applies to no other employee group.

7. Group E was created in 1948, while Group D was not created until 1966. Many employees in Group E have more seniority than the employees in Group D. Since employees going from Group E to Group D take their seniority with them the seniority status of members of Group D is frequently diminished when there are transfers from Group E to Group D.

8. Seniority status determines work shifts, vacation preferences, days off, transfers and most importantly reduction in work forces.

9. Twenty two persons have transferred into Group D from other seniority groups or have been hired into seniority Group D from outside the company since July 1, 1973. Sixteen have been males who have transferred from Group E. There are currently 19 Group E employees having permanent bids or file to transfer to Group D positions at specific locations. There are currently three permanent ticket counter positions which need to be filled.

10. The median group seniority in Group E is approximately 8 years, 6 months. The median group seniority in Group D is approximately 4 years, 5 months.

11. The transferability of group seniority between employee Groups D and E diminishes the relative seniority status of current ticket agents, thereby diminishing their relative leverage for the purposes of bidding, promotions and transfers and making current ticket agents more likely to be laid off in case of reduction in work force.

12. Females comprise over 60% of Frontier counter agent positions, whereas males comprise 100% of Frontier station agent positions. With sufficient reduction in the labor force the transferability procedure from Group E to Group D could have the effect of phasing out present Group D employees.

13. Plaintiff Wells has not been adversely affected in her bids for vacation preference, days off and work shifts, but her seniority rank has diminished making her more vulnerable for layoff in case of work reduction. All employees in Group D, more than 60% of whom are women could be similarly affected since Group E employees on the average have more seniority than Group D employees.

14. As of October 1972 there were 95 ticket counter positions, thirty three of which were filled by Group E members. Since the date of the agreement sixteen of the persons transferring to Group D are from Group E with ticket counter experience.

15. According to defendant's current records one woman has bid and 7 non-employee women have applied for job positions in seniority Group E. None of these 8 women has any Group D seniority. The one woman who bid for a job position in Group E withdrew her bid. None of the 7 non-employee women applicants has been employed. Frontier has never employed a woman station agent.

16. There was testimony that the business of Frontier is presently expanding, but it is common knowledge that the economic condition of the country is deteriorating. Inflation is increasing, unemployment rising, the business of airlines generally is decreasing and larger airline subsidies are demanded.

17. In a worsening economic situation the work force is reduced and those with the lowest seniority are laid off. The present transferability provision from Group E to Group D without loss

of seniority would result in present Group D employees, the majority of whom are women, being the first to lose their jobs in a worsening economic situation.

18. The transferability provision does not require that Group E members have ticket counter experience, but permits those without such experience to bid for any existing vacancy. The transfer of Group E members to Group D without ticket counter experience would further increase the possibility of the loss of jobs by Group E employees, the majority of whom are women.

19. At the present time the evidence reveals only minimal adverse effect on women in Group D, but in a depression which is possible, the adverse effect would materially increase.

20. A provision in the labor agreement requiring at least 6 months ticket counter experience before permitting transfer would limit the effect of unlimited transferability.

21. The testimony revealed that lifting of freight into air planes is included in the duties of Group E employees. There is no testimony as to how the ability to lift is determined or whether it is necessary for all Group E members to lift such freight. The evidence submitted reveals no discrimination.

22. There has been no loss of wages by plaintiff Wells or any member of the class.

23. On September 18, 1973, plaintiff Wells filed a charge of discrimination against defendants with the Equal Employment Opportunity Commission, charge number TDA 4–04–5.

24. On March 27, 1974, the Equal Employment Opportunity Commission sent plaintiff by mail a document styled "Notice of Right to Sue within 90 Days" regarding charge number TDA 4–04–5.

25. This action was filed on April 23, 1974.

*Conclusions of Law*

1. This Court has jurisdiction under the provisions of Title VII of the Civil Rights Act.

2. This is a proper proceeding pursuant to Rule 23(b) Federal Rules of Civil Procedure providing for class action relief.

3. This is not a case involving collective bargaining and seniority transfer systems which "lock in" and perpetuate the effects of past discrimination. Bowe v. Palmolive Company, 489 F.2d 896 (7th Cir. 1973).

4. This is a case where the new collective bargaining agreement, effective July 1, 1973, providing for transfer of departmental seniority from Group E to Group D without ticket counter experience has the effect of diminishing the seniority status of Group D employees and increasing the possibility of loss of jobs. Such a result would discriminate against female employees, who make up the majority of Group D.

5. It is not necessary to show that the complained of practice adversely affects only females in order to demonstrate a violation of Title VII. A practice or procedure that has mixed effects may be presumptively violative of Title VII when the benefits or detriments of the practice bear a significant correlation to race or sex. United States v. United States Steel Corp., 371 F.Supp. 1045 (N.D.Ala.1973).

6. Statistical evidence alone may create a presumption of a claim of employment discrimination. Parham v. Southwestern Bell Tel. & Tel., 8 Cir., 433 F.2d 421.

7. Unions have a duty to inquire into the effects of agreements. A union agreement which allows discrimination is itself unlawful. Lansdale v. Air Line Pilots Association International, 430 F.2d 1341 (5th Cir. 1970).

8. A determination by a union that a practice is not discriminating is not binding on employee or courts in Title VII. Hutchings v. United States Industries, Inc., 428 F.2d 303 (5th Cir. 1970).

9. The facts herein present a case of first impression. Appellate courts have not decided the specific issues here in-

volved. The role of Courts is always to render fair and just decisions and in Title VII cases to eliminate or minimize discrimination wherever possible.

10. In this case while there is presently only minimal discrimination resulting from transfers from Group E to Group D and no loss of wages suffered by plaintiff Wells and other members of the class there is the possibility in a period of rising unemployment of major loss of jobs by female members of Group D.

11. In order to prevent major discrimination the present agreement between the defendants is modified so as to provide that only Group E members presently having at least 6 months ticket counter experience will be eligible for transfer to Group D without loss of seniority.