**Tyrone Zachary ROSS, Plaintiff,**

v.

**CITY OF FORT WAYNE BOARD OF PUBLIC SAFETY, Defendant.**

**Civ. No. F 83–128.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Dec. 6, 1983.

Stephen P. Rothberg, Rothberg & Chambers, Fort Wayne, Ind., for plaintiff.

Mitchell A. Sherr, Associate City Atty., Fort Wayne, Ind., for defendant.

## MEMORANDUM OPINION AND ORDER

LEE, District Judge.

This matter is before the court for a decision on the merits following a bench trial held on Thursday, November 17, 1983. Plaintiff brought this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, alleging discrimination in the employment hiring practice of the defendants. The court, having examined the entire record and having determined the credibility of the witnesses after viewing their demeanor and considering their interests, hereby renders and enters the following Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### Findings of Fact

Plaintiff is an adult black male. Defendant, City of Fort Wayne, Board of Public Safety, is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

Plaintiff was born in Trinidad, West Indies, on March 15, 1947. Since May 26, 1972, plaintiff has been a citizen of the United States.

Prior to coming to the United States, plaintiff had worked and resided in his birth place, Trinidad, as well as in Venezuela. While in Trinidad, plaintiff completed

his high school education. Later, in 1967, plaintiff entered the Trinidad-Tobago Regiment which is a defense force in that country similar to that of the National Guard in this country. Plaintiff received three months of training for his employment in the Regiment and served in that Regiment for one year. After leaving the Trinidad-Tobago Regiment, plaintiff went to work for Brink's Trinidad-Tobago, Ltd. which is a security agency dealing with the protection of money and documents. He received training in general areas of security as well as specific firearm training. His employment with Brink's, Ltd. lasted about two years. It was during that time period, or shortly thereafter, that plaintiff was given a precept by the Trinidad-Tobago government. The precept was an official designation which permitted plaintiff to make arrests nation-wide. His official title was "Constable" and plaintiff served as a constable in Trinidad for one and one-half years.

In October of 1971, plaintiff emigrated to Brooklyn, New York City, where he took up residence with his mother. Plaintiff joined the United States Army shortly thereafter and served in the Medical Corps. Plaintiff received an honorable discharge from the Army after approximately two years' service.

After leaving the United States Army, plaintiff entered the United States Customs Service in New York City. After three and one-half months, plaintiff left the Customs Service in order to take a position with the United States Postal Inspection Service as a security police officer. Plaintiff received training at the Inspection Service's training school. Plaintiff served with the Postal Inspection Service for approximately five years and his duties included the protection of federal judges, federal employees, federal buildings and the United States mail.

In October of 1977, plaintiff left his employment with the United States Postal Inspection Service and moved to Fort Wayne, Indiana. Since that time, except for periods of time when educational or employment pursuits have taken him from the community, plaintiff has resided in Fort Wayne, Indiana.

While plaintiff resided in Fort Wayne, he was able to successfully complete approximately thirty-six hours of college credit at Indiana University, Purdue University, Fort Wayne. Plaintiff has also graduated from the New York School of Dental Technology.

In July of 1981, plaintiff submitted an application for employment with the Fort Wayne Police Department. The application process was the necessary prerequisite to obtaining an appointment to the Fort Wayne Police Academy. At the time plaintiff submitted his application, there were approximately three hundred fifty to four hundred other persons who wanted to become Fort Wayne police officers. Because there were only fourteen positions available at the Police Academy, it was necessary that the number of applicants be pared down. To do so, the applicants were required to take physical, psychological, and written examinations. Those who successfully completed the examinations were then interviewed by the Board of Public Safety. That interview was the last stage in the hiring process preceding appointment to the Police Academy.

Between March and May of 1982, the plaintiff satisfactorily completed all physical, psychological and written examinations required of candidates for positions with the Fort Wayne Police Department. Because he had successfully completed those examinations, the plaintiff was given an oral interview with the Board of Safety. The interview was held on June 15, 1982. Present at the interview were members of the Board of Public Safety which included Nick Palermo, Helen Brown and William White, as well as David Rieman, Chief of Police of the City of Fort Wayne. At approximately the same time, fifty-five other applicants were granted oral interviews by the Board of Public Safety. Though all had allegedly completed the necessary examinations, it appears that at least one applicant did not successfully pass the agility test. Further, the records with respect

to some of the applicants are incomplete so that it is impossible to determine whether or not those applicants had successfully completed the requisite examinations.

During the course of the interview, plaintiff was asked questions about what he considered to be the necessary attributes for a police officer and further about why he thought he would be a good police officer. In response to that line of questioning, plaintiff indicated that his four grandparents were of distinct racial and/or national origin backgrounds. Plaintiff indicated that he believed that his mixed heritage would be beneficial in his service to the community as a police officer. Plaintiff further stated that the only type of person who he could not work with would be a racist.

After plaintiff raised the issue about his mixed heritage, Helen Brown, of the Board of Public Safety, asked plaintiff about his race. Plaintiff again explained that he was of mixed racial and/or national origin backgrounds. Ms. Brown repeated the question and plaintiff gave substantially the same answer whereupon Ms. Brown informed plaintiff that it was necessary to know the precise race to which plaintiff belonged in order that plaintiff would be appropriately categorized for their Affirmative Action Program. This line of questioning arose notwithstanding the fact that plaintiff is without question black by appearance.

The interview concluded shortly after the questions relating to race. Prior to leaving the interview, plaintiff was told by several members present at the interview that plaintiff would make a fine police officer.

Approximately two weeks after the interview, plaintiff learned that he was not selected. Instead, fourteen others were selected for the July, 1982 Fort Wayne Police Academy class, eight of whom were white, five of whom were black, one of whom was Hispanic, eleven of whom were male, and three of whom were female. Upon learning of his non-acceptance, plaintiff called Chief Rieman and was informed that if he was dissatisfied he should complain to the appropriate federal or state agency. Plaintiff then complained to Mr. David Swinehart who was a personnel consultant to the City of Fort Wayne.

At about the time that plaintiff was complaining to Chief Rieman and Dave Swinehart, it was learned that one of the original fourteen candidates selected declined to attend the Fort Wayne Police Academy. Upon learning of this development, Dave Swinehart contacted plaintiff. Mr. Swinehart, who at the time of trial was Director of the Labor Relations Center at Purdue University in Fort Wayne and who at the time of the operative events had been in the personnel field for fifteen years, part of which had been spent as a consultant to the City of Fort Wayne, was concerned about plaintiff because he had heard from Chief Rieman and others that Helen Brown had "grilled" plaintiff about his race at the time of the interview. Because of his concern that race may have been taken into consideration and further because of the fact that he felt plaintiff was a qualified applicant, Mr. Swinehart decided to intervene on plaintiff's behalf.

In response to the call from Mr. Swinehart, plaintiff went to Mr. Swinehart's office in the City-County Building on the morning of June 29, 1982. Mr. Swinehart explained to plaintiff that one of the original candidates had withdrawn his application and that therefore an opening existed for the July 1982 Police Academy class. After plaintiff assured Mr. Swinehart that he was indeed interested, Mr. Swinehart took plaintiff's file to the Board of Public Safety. Approximately one-half hour later, Mr. Swinehart returned and informed plaintiff that, once again, his application had been rejected.

During all times relevant to the application process for entry into the July 1982 Fort Wayne Police Academy, the defendant was under a Consent Decree with the Metropolitan Human Relations Commission of Fort Wayne which established certain recruitment, hiring, and promotion policies for the Fort Wayne Police Department. Part of the Consent Decree related to the conducting of oral interviews and provides:

The Fort Wayne Police Department, Fort Wayne Board of Public Safety and Police Merit Commission will establish and make available written rules and procedures for the conduct of oral interviews for hiring and promotion, including types of questions to be asked, the factors to be considered by the interviewer, the method by which oral interview scores are to be determined by the interviewer and the scoring thereof.

(Plaintiff's Exhibit 1). The defendants did not comply with the requirements of this section of the Consent Decree, and may in fact have been unaware of its existence. As a result, the criteria used by the Board of Public Safety in selecting the candidates for the Police Academy class beginning July of 1982 were undefined and subjective.

The objective criteria which were introduced at trial indicates that plaintiff, at the time of his application, was as well or better qualified for employment as a police officer with the City of Fort Wayne than several of the candidates ultimately selected for the July 1982 Fort Wayne Police Academy class. This is best exemplified in defendants' Exhibit B which provides a synopsis of the qualifications for each of the fifty-six final applicants. A review of that exhibit, which was the only evidence introduced about relative qualifications, leads unerringly to the conclusion that plaintiff was, at least by objective standards, better qualified than at least four of the candidates ultimately selected for the July 1982 Police Academy class. The objective evidence shows that one applicant had two years of education at Snider High School and his interests included tennis and bicycling. Evidence with respect to another accepted applicant shows that he was a graduate of North Side High School whose interests included golf and racquetball. The evidence further showed that a third applicant was a graduate of South Side High School who had two months of EMT training at Ivy Tech and two years of softball experience. Finally, another applicant ultimately accepted to the Police Academy was shown by the evidence to be a graduate of Central High School who had six months of post-high school education and had enjoyed skating for fifteen years. There is no doubt that plaintiff's credentials equal or exceed those of the foregoing.

At the time plaintiff made application to the Fort Wayne Police Department he was fully qualified for employment as a Fort Wayne police officer. Plaintiff has never been advised by the defendants, their agents or anyone connected with the Fort Wayne Police Department that he was not qualified to be a police officer with the Fort Wayne Police Department.

Had plaintiff, in fact, been selected for admission to the Police Academy beginning in July of 1982, he would have earned a certain set salary; he would have accrued a certain number of days of seniority with the Fort Wayne Police Department; he would have been eligible for pension and retirement benefits; he would have attained the rank of Patrol Officer; and he would have been eligible for group medical insurance by reason of employment as a police officer for the City of Fort Wayne.

Since July of 1982, plaintiff has earned approximately $400.00 as a referee for the Pepsi-Cola Bottlers soccer league. He further received approximately $1,200.00 in GI Bill benefits.

On the basis of the record before the court, and the facts adduced at trial, the court finds that race was the motivating factor in plaintiff's not being selected to the Fort Wayne Police Academy. The court further finds that plaintiff is entitled to placement in the Police Academy class next to commence after entry of this judgment; establishment of an employment date for purposes of seniority, pension and retirement as of the date in July 1982 when the Academy class started; all wages which would have been earned by plaintiff had he been selected for admission to the Fort Wayne Police Academy as of the entry date of the July 1982 class less those plaintiff was able to earn in mitigation; membership in the police pension and retirement plan effective at the entry date of

the July 1982 class; restoration of all benefits which would have accumulated in said plan or plans in favor of plaintiff had he been selected for admission to the Fort Wayne Police Academy for the class beginning in July of 1982; and costs and attorney fees in the amount to be determined by the court upon the submission of the appropriate documentation by counsel for plaintiff.

*Conclusions of Law*

This court has jurisdiction over the parties and the subject matter pursuant to 42 U.S.C. § 2000e–5f. Plaintiff has complied with the procedural requirements of Title VII and, as a black, enjoys the protection of 42 U.S.C. § 2000e, *et seq.*

■ This is an individual disparative treatment action in which plaintiff must demonstrate that he was discriminated against because of his race to establish a violation of Title VII. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–36, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977). Plaintiff must prove that a forbidden employment practice was the force behind his not being hired in order to come within the protective ambit of Title VII. *Id.* Under Title VII, "what is prohibited is discrimination that is racially [or on the basis of color, religion, sex, or national origin] motivated." *Bradington v. International Business Machines*, 360 F.Supp. 845, 854 (D.Md.1973), *aff'd.*, 492 F.2d 1240 (4th Cir.1974). Accordingly, the central focus of the court's inquiry is whether the Fort Wayne Board of Public Safety treated plaintiff less favorably than others because of his race. *See Furnco Construction v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). It is to that question which the court now turns.

In order to succeed in this litigation, plaintiff must establish a *prima facie* case from which the court may infer a causal connection between plaintiff's race and defendants' refusal to hire. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Upon the establishment of a *prima facie* case, the employer must rebut the inference of a causal connection by articulating legitimate nondiscriminatory reason for the actions taken with respect to plaintiff. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer articulates legitimate nondiscriminatory reason, the final burden then falls upon plaintiff to demonstrate that the reason given by the employer was in fact pretextual. *Id.; Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

The United States Supreme Court in *McDonnell Douglas Corp. v. Green, supra,* held that a plaintiff could make a *prima facie* claim of employment discrimination by showing:

(1) That he belonged to a racial minority; (2) That he applied and was qualified for a job for which the employer was seeking applicants; (3) That, despite his qualifications, he was rejected; and (4) That, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824 (footnote omitted).

■ There can be no doubt in this case but that plaintiff has proven a *prima facie* case of employment discrimination. In fact, defendant apparently concedes that to be the situation, for in its tendered findings of fact and conclusions of law, the defendant indicates that plaintiff has established a *prima facie* case. In any event, the record wholly supports the conclusion that plaintiff has met his initial burden.

First, plaintiff is undeniably black and as such is a member of a protected class. Second, plaintiff was qualified—in fact more qualified than several of the other candidates who were ultimately granted a position in the Academy. Third, despite being qualified, plaintiff was not offered a position. Fourth, after plaintiff was not selected the Board of Safety continued to seek candidates particularly when it was

learned that one of those originally chosen would not be attending the July 1982 class. *See DeLesstine v. Fort Wayne State Hospital,* 682 F.2d 130, 132 (7th Cir.1982) (it matters not that replacement may also be member of a protected class).

█ Since plaintiff established a *prima facie* case, the burden, as indicated, shifted to the defendant to articulate a legitimate, non-discriminatory reason for its actions in not hiring plaintiff. Defendant need not prove a non-discriminatory reason by the preponderance of the evidence. Rather, defendant must only articulate some legitimate non-discriminatory reason. The burden at this stage of Title VII litigation has been set forth on numerous occasions and was perhaps stated in its clearest terms by the United States Supreme Court in *Texas Dept. of Community Affairs v. Burdine* as follows:

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant.

430 U.S. at 253, 254, 101 S.Ct. at 1093–1094 (citation omitted); *see McDonnell Douglas, supra,* 411 U.S. 804, 805, 93 S.Ct. 1825.

In the present matter, defendant has wholly failed to articulate a legitimate non-discriminatory reason for not hiring plaintiff. Defendant never explained its decision either to the plaintiff or to this court. Absent any explanation whatsoever the only inference to be drawn from the record is that race was indeed a motivating factor in defendant's decision respecting plain-

tiff's employment opportunities with the Fort Wayne Police Department.

True, at least one witness, Nick Palermo, testified that there were "other factors" taken into consideration. What those "other factors" were, however, remains unexplained. There was also the suggestion that much deference should be given the Board of Safety and that this court should not usurp the hiring prerogatives of the Fort Wayne Police Department.

While defendant's proffered reasons may in a superficial sense be appealing, this court does not view them sufficient to rebut a *prima facie* case of employment discrimination. With respect to the claim that "other factors" were taken into consideration, it is imperative to note that the employer, in its rebuttal to the complainant's case, must "offer his justification for his employment decision, rather than ... force the complainant to refute hypothetical reasons why the employer might have found him relatively less qualified." *Davis v. Weidner,* 596 F.2d 726, 730 (7th Cir.1979). Further, while this court agrees that some deference should be given to the Board of Safety's decision, this court will not neglect its statutory responsibility of ensuring fair employment practices. Judicial deference is legitimate only to the extent that it is based upon a desire to avoid replacing the Board's judgment about police employment with judgments made by the judiciary. *See Davis, supra,* at 731. Here, any inclination that this court may have had towards deferring to the Board of Safety's decision, is abated by the fact that nothing in the record rebuts the inference that the plaintiff was not hired because of his race. Accordingly, the court is of the view that defendant has failed to rebut plaintiff's *prima facie* case and because of defendant's failure to articulate a legitimate non-discriminatory reason, liability must be found in favor of plaintiff.

█ Having determined liability in favor of the plaintiff, the court now turns to the question of damages. Defendant's violation of Title VII entitles plaintiff to a position in the Fort Wayne Police Academy.

See Paxton v. Union National Bank, 688 F.2d 552, 574 (8th Cir.1982); Danner v. Phillips Petroleum Co., 447 F.2d 159, 162 (5th Cir.1971). It also entitles plaintiff to an award of back pay. Albermarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Such a back pay award includes fringe benefits which would have been received as an employee. Bowe v. Colgate Palmolive Co., 489 F.2d 896 (7th Cir.1973). Once a determination has been made as to the gross amount of back pay owed, the burden shifts to defendant to prove "what should be deducted from that award as '[i]nterim earnings or amounts earnable with reasonable diligence.' 42 U.S.C. § 2000e–5(g)." Paxton, supra, at 574; see also Orzel v. City of Wauwatosa Fire Dept., 697 F.2d 743, 756 (7th Cir.1983); Sangster v. United Airlines, Inc., 633 F.2d 864 (9th Cir.1980), cert. denied, 451 U.S. 971, 101 S.Ct. 2048, 68 L.Ed.2d 350 (1981).

Notwithstanding this court's conclusion that plaintiff is entitled to a back pay award, it is difficult, at this juncture, to assess the exact amount of such an award. This is so because of the fact that while plaintiff in his proposed findings sets forth what he deems to be the appropriate calculations, and defendant apparently does not dispute those calculations, this court is unable to determine exactly what those figures mean with respect to the ultimate amount of damages. It is expected that the parties should be able to stipulate to the appropriate figures, and the court expects that they can file an appropriate stipulation so that damages may be assessed. If, however, the parties are unable to reach an accord on the amount of damages, the court will set the matter for a hearing. Within twenty (20) days from the date of this order, the parties are to submit any stipulation they can reach regarding damages. At that same time the parties are invited to submit further briefs on the issue of damages. Should the parties be unable to reach an accord with respect to damages, the court will set the matter for hearing.

■ Plaintiff also seeks costs and attorney's fees in this action. Section 2000e–5(k) of Title 42 of the United States Code provides that in any Title VII proceeding, the court may allow the prevailing party a reasonable attorney's fee as part of the costs. The court finds that costs and attorney's fees should be assessed against defendant in this action. The considerations relevant to computing a reasonable attorney's fee award have been set forth by the United States Court of Appeals for the Seventh Circuit in Waters v. Wisconsin Steel Works, 502 F.2d 1309 (7th Cir.1974), cert. denied, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). The time spent by the attorney is not to be simply multiplied by a billing rate. The primary factors in the computation include not only the time reasonably spent on the case, but also the value of the attorney's work, given local legal fees, and his abilities, reputation and degree of success in the case. Also relevant is whether the attorney's efforts in this case precluded him from working on other legal matters. These factors are drawn from the sections of the Code of Professional Responsibility that describe how an attorney should determine the fee he may properly charge a client.

While plaintiff's request for an award of costs and attorney's fees will be granted, the court cannot at this time, on the showing before it, compute the proper amount of such an award. Plaintiff will therefore be directed to file a complete breakdown of charges and time and such other material supporting the request for attorney's fees for this case as is required by Waters v. Wisconsin Steel, supra. The amount of such an award will be set by further order of the court. A copy of plaintiff's showing relating to attorney's fees shall be served on defendant, and defendant shall have ten (10) days from the date of filing to respond or otherwise challenge the showings and fees set forth.

This memorandum of decision contains the court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. See Rucker v.

*Higher Educational Aids Board,* 669 F.2d 1179, 1183–84 (7th Cir.1982).

### Conclusion

Plaintiff has established by a preponderance of the evidence that defendant's refusal to hire him was an act of discrimination. Accordingly, a violation of Title VII has been shown, thus entitling plaintiff to recover.

To remedy the violation, the court FINDS and ORDERS the following. Plaintiff is entitled to placement in the Fort Wayne Police Academy class next to commence after entry of this judgment. The court further ORDERS and FINDS that plaintiff is entitled to the establishment of an employment date for purposes of seniority, pension and retirement of the date upon which the July 1982 Academy class commenced; all wages which would have been earned since that date in July of 1982 by plaintiff had he been selected for admissions to the Fort Wayne Police Academy less those plaintiff was able to earn in mitigation; membership in the police pension and retirement plan effective as of the date of start of the Academy class in July 1982; restoration of all benefits which would have accumulated in said plan or plans in favor of plaintiff had he been selected for admission to the Fort Wayne Police Academy for the class beginning in July of 1982; and costs and attorney fees.

It is FURTHER ORDERED that the parties are to attempt to arrive at a stipulation with respect to damages within twenty (20) days of the date of this judgment. Should the parties be unable to reach agreement, the matter will be set for a hearing.

With respect to attorney fees, plaintiff is ORDERED to file a complete statement of charges and an affidavit of counsel in support of his request for attorney fees within ten (10) days after the date a damages stipulation has been reached or this court rules upon the damage issue. A copy of plaintiff's showing relating to attorney's fees shall be served on defendant and defendant shall have ten (10) days from the date of filing to respond or otherwise challenge the showing and fees set forth.