· Jacqueline **BARTH** et al., Plaintiffs,

v.

**BAYOU CANDY CO., INC., Defendant.**

**Civ. A. No. 72–753.**

United States District Court,
E. D. Louisiana.

May 1, 1974.

Lynne Rothschild Stern, George M. Strickler, Jr., New Orleans, La., for plaintiffs.

Peter J. Butler, New Orleans, La., for defendant.

ALVIN B. RUBIN, District Judge:

On February 7, 1974, the court found that Bayou Candy Co. had engaged in sexual discrimination in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Plaintiffs have submitted a proposed order detailing the equitable relief to which they feel they are entitled; the defendant has opposed portions of plaintiffs' proposal, and the court has heard argument from each with respect to their positions. While certain specific relief, as detailed below,

is ordered, some preliminary remarks may be appropriate with respect to that relief *not* ordered.

Plaintiffs desired that Bayou give *all* members of the class an opportunity to spend one day familiarizing themselves with the duties of employees in the office, manufacturing, maintenance and shipping departments. But the class members who actually secured employment at Bayou are well aware of the activities in those other departments. Testimony at trial, as well as photographs introduced into evidence, indicated that Bayou is a relatively small manufacturing operation. Thus, each employee is familiar with the duties of her fellow employees. In addition, most, if not all, of the class members employed at Bayou worked in the packaging department. The evidence showed that large windows afford persons in that department an unobstructed view of the work performed in other parts of the plant. In Bowe v. Colgate, Palmolive Co., 7 Cir. 1973, 489 F.2d 896,[1] 6 E.P.D. Paragraph 89F3, cited by plaintiffs, there were numerous employees and job classifications. There is no reason that class members should need a familiarization program before deciding whether to apply for a position in the other departments.

■ Having had its hiring practices declared discriminatory in violation of Title VII at the trial, Bayou now seeks court approval of a plan whereby Bayou would be allowed to require job applicants to submit, in some instances, to physical examinations. While the criteria for deciding when to give these examinations purportedly would be nonsexual in nature, they could in application become a guise for discriminating against prospective female employees and so circumvent the Act's prohibitions. "Discrimination is not to be tolerated . . . through the unequal application of a seemingly neutral company policy." Sprogis v. United Air Lines, Inc., 7 Cir. 1971, 444 F.2d 1194, 1198. Should Bayou think pre-employment physical examinations necessary, it may adopt such an alternative proposal, provided it applies it equally in all regards to all prospective employees, regardless of sex.

*Remedial Measures*

■ Section 706(g) of Title VII grants the court the power to enjoin employment practices found to be unlawful, as well as award such affirmative relief as is deemed to be appropriate. The court has a special responsibility to see that the relief ordered both brings about an end to discriminatory employment practices and fairly redresses the wrongs suffered by the aggrieved claimants. To these dual ends, the following relief is awarded.

(1) Bayou is enjoined from engaging in sexually discriminatory employment practices of any kind, including, but not limited to, any such practices with respect to all forms of recruitment, whether accomplished by word of mouth, advertisement, communication with employment agencies, or other means.

(2) Bayou is enjoined from utilizing any criteria for employment or job assignment that discriminate on the basis of sex.

(3) Bayou shall not institute a program whereby job applicants will selectively be required to submit to physical examinations as a condition precedent to employment.

1. In *Bowe* the manufacturing plant employed some 1100 people, approximately 160 of whom were female, and the work force was categorized into 17 groups, some of which were further subdivided into numerous subcategories. The physical plant was housed in various buildings. Under those facts, the court found the following relief appropriate: "Colgate was required to set up an 'exposure program' whereby women would be given an opportunity to visit and observe operations of the various departments, examine job descriptions, and be formally instructed in the nature of the work. Employees were to be paid for time spent in the program including overtime rates for overtime." 489 F.2d at p. 900, 6 E.P.D. at p. 6129.

(4) When vacancies arise in the office, manufacturing, maintenance and shipping departments, Bayou is ordered to give class members first preference among applicants seeking the position for a period of one year from the date of this order.

(5) When vacancies arise in any of the departments listed in paragraph number four, above, Bayou shall post notice of it on a bulletin board reserved for official announcements or, if there is no such bulletin board, in some other conspicuous place. This requirement shall continue for a period of one year from the date of this order, as will those specified in numbers six, seven, and eight, below.

(6) Bayou is ordered to mail copies of notices of vacancies in the above departments to all class members no longer employed at Bayou; but such notice shall be limited to those class members specifically requesting it, in writing, from Bayou.

(7) Should any class members denied employment because there were no vacancies in the packaging departments (although vacancies existed in other departments) wish to apply for any vacancies in the shipping, office, maintenance or manufacturing departments, Bayou shall give each of them a maximum of one day in which to familiarize herself with the workings and requirements of positions in those departments.

(8) Bayou is ordered to post the terms of this order on a company bulletin board generally reserved for official notices or, if none is available, in some other conspicuous place. The notice shall conform to example A. (See appendix.)

(9) Bayou is ordered to notify those class members who are no longer employed at Bayou and have not opted out of the class of the terms of this injunction by sending them a first-class registered letter conforming to example B. (See appendix.) Bayou shall prepare and mail this letter within two weeks from the signing of this order and shall furnish a list of the names and addresses of all individuals to whom the letter is sent to the attorneys for the class.

### Attorney's Fees

Section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k), grants the court, in its discretion, the power to award attorney's fees to the prevailing party. The court considers that this is an appropriate case for an award. This issue has not been seriously disputed; there is controversy only about its amount.

The recent decision in Johnson v. Georgia Highway Express, Inc., 5 Cir. 1974, 488 F.2d 714, makes clear those factors to be considered in determining the amount of fees to be allowed. Thus, there is no need to restate them here. But it is appropriate to note at the outset, as did the court there,

"[Courts] do not have a mandate under Section 706(k) to make the prevailing counsel rich . . . . The statute was not passed for the benefit of attorneys but to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition and to fairly place the economical burden of Title VII litigation. Adequate compensation is necessary, however, to enable an attorney to serve his client effectively and to preserve the integrity and independence of the profession." Id. at 720.

Three attorneys were involved in representing the class. The first, Ms. Millenson, handled the matter through April, 1973, at which time she moved from the New Orleans area. Ms. Stern then assumed control of the case and worked on it alone until November, 1973, when she associated Mr. Strickler to work with her. Ms. Stern and Mr. Strickler worked jointly from that date until the present.

Counsel for the plaintiffs have submitted itemized lists of the time spent by each attorney in the preparation and trial of the case. The total hours for each were: Ms. Millenson, 35.5 hours; Ms. Stern, 70 hours; Mr. Strickler, 24.8

hours. While Bayou has no objections generally to the hours shown by the sheets, it does question some 4.5 hours on Mr. Strickler's list. Those entries reflect time during which he and Ms. Stern conducted an inspection of the defendant's plant, deposed Mr. Nielson (defendant's general manager), and attended a status conference with the court. Counsel for Bayou states that the presence of both attorneys was unnecessary, arguing that one would have been sufficient. There is also some issue with respect to the need for both plaintiffs' attorneys at trial. Defendant contends that the case was one of relative simplicity and points out that only one defense attorney was required.

While it is true that one attorney is often sufficient for adequate representation, this principle is by no means controlling. Ms. Stern handled the bulk of the preparation alone, and it was only as the case approached trial that she associated Mr. Strickler. Ms. Stern performed her task admirably, as did all counsel in the case, but the court takes notice of the fact that her admission to practice was a relatively recent one. It is by no means uncommon for an attorney of little experience to seek the advice of one with more years at the bar. Mr. Strickler has practiced considerably longer than Ms. Stern and has acquired some expertise both in litigation in general and civil rights cases in particular. In addition, Ms. Stern was engaged in another trial in this section for a number of days immediately preceding the trial in this case. Although that factor certainly does not furnish carte blanche for one attorney to associate another in a matter, and while it is true that this is a hazard often faced by trial attorneys, it does seem to be a fact that should be considered in judging whether Ms. Stern properly associated other counsel.

Other considerations suggested in *Johnson* here applicable include the results obtained at trial and the fee arrangement between plaintiffs and their attorneys. Plaintiffs sought an end to the sexually discriminatory practices of Bayou and a chance for females to compete with men for job vacancies at the plant. To that extent they acted as the private attorneys-general envisioned by Congress, aiding in the enforcement of the Act. Unable to afford the cost of counsel, plaintiffs were forced to resort to an agreement whereby any remuneration to the attorneys would be based solely upon fees awarded under the Act by the court. Through the work of their counsel, plaintiffs were able to achieve the bulk of the relief sought. Had plaintiffs not prevailed, counsel would have gone uncompensated for the hours spent working on the case. In order to accomplish the purposes of the Act, able representation of plaintiffs should be encouraged. And one way in which such representation may be encouraged is to ensure that successful litigation results in adequate remuneration to those attorneys representing the prevailing party. Defendants in such cases must not be penalized; however if they put plaintiffs to a protracted trial, they must be prepared to bear the expense that is consonant with the purpose of the Act.

The customary fee for attorneys in the New Orleans area begins at $35 per hour. As an attorney gains experience, or as his or her expertise increases in a particular area of the law, counsel's fees increase substantially. Considering the time spent by plaintiffs' counsel, the manner in which they conducted the prosecution of the claims, and the contingency of their fee (as well as the other factors mentioned in *Johnson*) Ms. Stern and Mr. Strickler's fees will be based on a rate of $50 per hour. Because Ms. Millenson's efforts were directed largely at early preparatory work, she will be awarded fees of $40 per hour.

Bayou is therefore ordered to pay total attorney's fees of $6,160.00 to plaintiffs.

*Costs*

In addition to attorney's fees, section 706(k) allows an award of costs to the prevailing party. Plaintiffs have submitted a list of expenses allegedly due them under this provision. Included in the list is a bill for $200 covering photographer's fees. Bayou takes issue with this figure, contending that the charge for "shooting time" *plus* individual prints is unwarranted. Bayou also questions whether the particular photographer used deserves payment based on customary New Orleans fees.

Mr. John Diem, a part-time photographer, was present, at plaintiffs' request, during the inspection of Bayou's plant. Both sides made extensive use of his photographs at trial. The charges for these services, as submitted by plaintiffs, were: ½ day's shooting at $250 per day—$125; 15 8 × 10 black and white prints at $5 per print—$75; total, $200.

Plaintiffs have presented evidence to show that it is customary among professional photographers in New Orleans to charge a flat rate of $250 per day for their services, plus an additional fee per print. Although Mr. Diem did not spend a full ½ day on the premises at Bayou, charges are based on a "portal to portal" rate (i. e., round trip from the photographer's place of business).

It was also pointed out that Mr. Diem performed these services at no immediate charge; instead, he agreed to wait until there was an award of costs by the court. Thus, like the plaintiffs' attorneys, Mr. Diem worked for only a hope, rather than a certainty of payment. And as noted with respect to attorney's fees, this factor is relevant in determining the amount of any award. Mr. Diem admitted that he is not a full-time photographer, but this does not make him any less a professional. I am satisfied that his expertise and services, as demonstrated, justify the awarding of fees based on the customary professional rates.

Bayou is therefore ordered to pay to plaintiffs a total of $429.57 in costs, as itemized below:

| | | |
|---|---|---:|
| 1. | Postcards | $  3.00 |
| 2. | Times-Picayune advertisement | 71.56 |
| 3. | Long distance phone call between plaintiffs and counsel | 6.96 |
| 4. | Original and one copy of Mr. Nielson's deposition | 110.85 |
| 5. | Photocopying | 32.40 |
| 6. | Postage | 4.80 |
| 7. | Photographer's fees | 200.00 |
| | | $429.57 |

*Plaintiffs' Personal Expenses*

One final issue remains, that of expenses allegedly incurred by the class representatives in assisting in the preparation of the case and in attending trial. Counsel for Bayou "vigorously objects" to the award of any fees for the personal expenses of plaintiffs. While I have no doubt that the class representatives provided much assistance to the preparation of the case, I find no authority to allow such items as costs awardable under Title VII. In fact, there is at least one decision to the contrary. See Bowe v. Colgate-Palmolive Co., S.D.Ind.1967, 272 F.Supp. 332. Nor are per diem and travel allowances available to parties to a suit under the federal witness fee statute, 28 U.S.C. § 1821. Picking v. Pennsylvania R. Co., M.D. Pa.1951, 11 F.R.D. 71; The Petroleum No. 5, S.D.Tex.1930, 41 F.2d 268. Accordingly, the request for those costs will be denied.

### APPENDIX A

TO ALL FEMALE EMPLOYEES IN THE PACKING AND MAINTENANCE DEPARTMENTS

Re: Jacqueline Barth, Eva Ortega and Dorothy Thibodeaux, et al.

vs.

Bayou Candy Company, Inc.
Section "C"

A trial was held in the above captioned class action on Feburary 7, 1973. The class includes all presently employed female non-office personnel, all women who were employed since December 1,

1969 in a non-office position, and all women denied employment at Bayou since December 1, 1969 because there were no vacancies in the packing department.

The Judge ruled that Bayou has discriminated against women by the maintenance of job classifications which were segregated on the basis of sex. The Judge awarded the following relief:

(1) Bayou is enjoined from engaging in sexually discriminatory employment practices of any kind, including, but not limited to, any such practices with respect to all forms of recruitment, whether accomplished by word of mouth, advertisement, communication with employment agencies, or other means.

(2) Bayou is enjoined from utilizing any criteria for employment or job assignment that discriminate on the basis of sex.

(3) Bayou shall not institute a program whereby job applicants will selectively be required to submit to physical examinations as a condition precedent to employment.

(4) When vacancies arise in the office, manufacturing, maintenance and shipping departments, Bayou is ordered to give class members first preference among applicants seeking the position for a period of one year from the date of this order.

(5) When vacancies arise in any of the departments listed in paragraph number four, above, Bayou shall post notice of it on a bulletin board reserved for official announcements or, if there is no such bulletin board, in some other conspicuous place. This requirement shall continue for a period of one year from the date of this order, as will those specified in numbers six, seven, and eight, below.

(6) Bayou is ordered to mail copies of notices of vacancies in the above departments to all class members no longer employed at Bayou; but such notice shall be limited to those class members specifically requesting it, in writing, from Bayou.

(7) Should any class members denied employment because there were no vacancies in the packaging departments (although vacancies existed in other departments) wish to apply for any vacancies in the shipping, office, maintenance or manufacturing departments, Bayou shall give each of them a maximum of one day in which to familiarize herself with the workings and requirements of positions in those departments.

(8) Bayou is ordered to post the terms of this order on a company bulletin board generally reserved for official notices or, if none is available, in some other conspicuous place.

(9) Bayou is ordered to notify those class members who are no longer employed at Bayou and have not opted out of the class of the terms of this injunction by sending them a first-class registered letter. Bayou shall prepare and mail this letter within two weeks from the signing of this order and shall furnish a list of the names and addresses of all individuals to whom the letter is sent to the attorneys for the class.

If, at any time you feel that Bayou is not complying with the terms of the injunction, please notify Lynne Rothschild Stern or George M. Strickler, Jr., attorneys for the class, at 344 Camp Street, Suite 1100, New Orleans, La. 70130 (Telephone: 523–5893).

Sincerely,
Benjamin W. Reisch
Clerk, United States District Court
400 Royal Street
New Orleans, Louisiana 70130

## APPENDIX B

Ms. Jane Doe
520 Bayou Road
New Orleans, La.

In Re: Jacqueline Barth, Eva Ortega & Dorothy Thibodeaux et al

vs.

Bayou Candy Company, Inc., Civil Action 72–753 Sec. "C"

Dear Ms. Doe:

A trial was held in the above captioned class action on February 7, 1973.

The class includes all presently employed female non-office personnel, all women who were employed since December 1, 1969 in a non-office position, and all women denied employment at Bayou since December 1, 1969 because there were no vacancies in the packing department.

The Judge ruled that Bayou has discriminated against women by the maintenance of job classifications which were segregated on the basis of sex. The Judge awarded the following relief:

(1) Bayou is enjoined from engaging in sexually discriminatory employment practices of any kind, including, but not limited to, any such practices with respect to all forms of recruitment, whether accomplished by word of mouth, advertisement, communication with employment agencies, or other means.

(2) Bayou is enjoined from utilizing any criteria for employment or job assignment that discriminate on the basis of sex.

(3) Bayou shall not institute a program whereby job applicants will selectively be required to submit to physical examinations as a condition precedent to employment.

(4) When vacancies arise in the office, manufacturing, maintenance and shipping departments, Bayou is ordered to give class members first preference among applicants seeking the position for a period of one year from the date of this order.

(5) When vacancies arise in any of the departments listed in paragraph number four, above, Bayou shall post notice of it on a bulletin board reserved for official announcements or, if there is no such bulletin board, in some other conspicuous place. This requirement shall continue for a period of one year from the date of this order, as will those specified in numbers six, seven, and eight, below.

(6) Bayou is ordered to mail copies of notices of vacancies in the above departments to all class nembers no longer employed at Bayou; but such notice shall be limited to those class members specifically requesting it, in writing, from Bayou.

(7) Should any class members denied employment because there were no vacancies in the packaging departments (although vacancies existed in other departments) wish to apply for any vacancies in the shipping, office, maintenance or manufacturing departments, Bayou shall give each of them a maximum of one day in which to familiarize herself with the workings and requirements of positions in those departments.

(8) Bayou is ordered to post the terms of this order on a company bulletin board generally reserved for official notices or, if none is available, in some other conspicuous place.

(9) Bayou is ordered to notify those class members who are no longer employed at Bayou and have not opted out of the class of the terms of this injunction by sending them a first-class registered letter. Bayou shall prepare and mail this letter within two weeks from the signing of this order and shall furnish a list of the names and addresses of all individuals to whom the letter is sent to the attorneys for the class.

If, at any time you feel that Bayou is not complying with the terms of the injunction, please notify Lynne Rothschild, Stern or George M. Strickler, Jr., attorneys for the class, at 344 Camp Street, Suite 1100, New Orleans, La. 70130 (Telephone: 523-5893).

Sincerely,
Benjamin W. Reisch
Clerk, United States District Court
400 Royal Street
New Orleans, Louisiana 70130