Richard Franklin MILLER et al.,
Plaintiffs–Appellees,

v.

Dale CARSON, etc., et al.,
Defendants–Appellants.

No. 79–3996
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 14, 1980.

William Lee Allen, Asst. General Counsel, Jacksonville, Fla., for defendants–appellants.

William J. Sheppard, Jacksonville, Fla., for plaintiffs–appellees.

Before CHARLES CLARK, VANCE and SAM D. JOHNSON, Circuit Judges.

VANCE, Circuit Judge:

This case arises from a class action challenging conditions at the Duval County, Florida jail. In an earlier decision we affirmed the district court's award to plaintiffs of interim attorneys' fees and costs through April 30, 1975, and its decision on the merits. *Miller v. Carson*, 563 F.2d 741 (5th Cir. 1977). In that case plaintiffs succeeded in securing wide reaching changes in the conditions of inmate confinements at the jail. We now address a challenge to the trial court's subsequent award of attorneys' fees and costs on appeal from June 30, 1975 through May 3, 1979 and attorneys' fees and costs in the trial court from May 1, 1975 through May 31, 1979. We affirm.

## I.

The facts of this appeal are not in substantial dispute. Defendants–appellants ("Carson") agree that plaintiffs–appellees ("Miller") filed numerous motions and petitions subsequent to final judgment, that the district court denied most of these motions, that after initial opposition Carson has begun to comply with the district court's earlier injunction and that the district court awarded Miller fees and costs for his postjudgment efforts.

The parties disagree, however, on the nature and effect of the postjudgment services rendered by the Miller attorneys. Miller argues that he was seeking to enforce the earlier injunction on which he prevailed and that his postjudgment efforts succeeded in achieving this end, although not by subsequent judicial decision. Carson contends, however, that Miller sought and was

denied further relief. Relying on *Sethy v. Alameda County Water District*, 602 F.2d 894, 898 (9th Cir. 1979), *cert. denied*, 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731, (1980) and *Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir. 1978), Carson asserts that the district court erred in awarding reasonable attorneys' fees under 42 U.S.C. § 1988, because Miller was not the prevailing party on the postjudgment matters.

The district court disagreed with Carson's view of the effect of Miller's efforts.

> Although plaintiffs were not successful in terms of a positive court order, the motions were reasonably related to the claims upon which plaintiffs were definitely successful. The motion for contempt, although never ripening into courtroom activity, no doubt had the effect of maintaining compliance with the Court's injunction.[1]

■ We cannot say that the district court was clearly in error in finding both that Miller's postjudgment work was related to the enforcement of the injunction and that this work contributed to the vindication of rights.[2]

■ Without question a party who vindicates important rights "prevails" for purposes of a § 1988 award, even though he or she does so without obtaining a formal judicial order.

> [F]or purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief.

S.Rep. No. 94–1011, 94th Cong. 2d Sess. 5 (1976), *reprinted in* [1976] U.S. Code Cong. & Admin. News, pp. 5908, 5912. *See Brown v. Culpepper*, 559 F.2d 274, 277 (5th Cir. 1977).

■ Because issues may at times be reasonably related, we reject anything in *Nadeau* or *Sethy* which insists that a district court must always sever an attorney's work into "issue parcels" and then assess that work for purposes of a fee award in terms of the outcome of each issue standing alone. *Panior v. Iberville Parish School Board*, 543 F.2d 1117, 1119 & n.2 (5th Cir. 1976) (discussing legislative history); *Watkins v. Scott Paper Co.*, 530 F.2d 1159, 1198 n.53 (5th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 139 (1976). Like the original action for an injunction, the postjudgment motions were directed towards remedying the constitutional wrongs found

---

1. As the district court also noted, the posttrial motions below cannot be severed from the matters on which Miller prevailed.

> In the present case, there is no question that plaintiffs are the prevailing party. They were successful in securing substantial changes in the condition under which inmates are confined in the Duval County Jail. These changes are embodied in the permanent injunction. . . . Subsequent to the injunction, plaintiffs' counsel filed various motions with regard to defendants' compliance with the order. . . .
>
> In its order of April 6, 1976, the district court reached a similar conclusion.
>
> This Court's permanent injunction of July 17, 1975, has not ended the judicial labor in this case. Compliance with the injunction could not be had overnight. As expected, in the course of implementation, various problems have surfaced. Many of these problems have been brought before the Court for further ruling. At various times the parties have sought modifications, clarifications and the imposition of sanctions for alleged violations of different aspects of the injunction.

2. For example, on March 9, 1976, the district court issued an order to show cause in response to Miller's petition to hold Carson in contempt for failing to comply with the court's permanent injunction of July 17, 1975 regarding the protection of inmates from the effects of fire in the jail. Carson had failed, inter alia, to act within 60 days to obtain and report the opinions of a qualified expert in the field of ventilation and smoke control on jail conditions.

Miller also prevailed in securing the benefits of the permanent injunction for the subclass of female pretrial detainees. This subclass had originally been housed at the Duval County Jail. To alleviate overcrowding pursuant to the injunction, this subclass was transferred to the Jacksonville Correctional Institution, which was also under Carson's control. In another order of March 9, 1976, the district court at Miller's request ordered that the subclass receive approximately the same rights under the permanent injunction that they would receive if housed in the Duval County Jail.

to exist at the Duval County Jail.[3] As the district court observed, the "motion for contempt . . . had the effect of maintaining compliance with the Court's injunction." That is, Miller's postjudgment efforts successfully induced Carson to comply with both the constitution and the regime of law, embodying important rights and duties, created by the injunction. *Cf. Northcross v. Board of Education*, 611 F.2d 624, 637 (6th Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980) (attorneys' fee award includes cost of monitoring post–verdict compliance with school desegregation order).

The award of a reasonable attorneys' fee in no way manifests an abuse of discretion.[4] *Harkless v. Sweeny Independent School District*, 608 F.2d 594, 596 (5th Cir. 1979); *Johnson v. Mississippi*, 606 F.2d 635, 636–37 (5th Cir. 1979); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 716–17 (5th Cir. 1974).

### II.

Carson also challenges the district court's decision to reimburse Miller for costs incurred in connection with postjudgment motions. Carson takes exception specifically to the award of costs relating to the fees and expenses of Kenneth B. Babcock, M. D., incurred on April 20–21, 1978. Carson argues that the case was no longer "pending" on these dates and that the costs were incurred in connection with "unsuccessful" attempts to secure further relief.

Carson, invoking *Escamilla v. Santos*, 591 F.2d 1086, 1088 (5th Cir. 1979), claims that the case was no longer pending after December 27, 1977, when motions for rehearing and rehearing en banc were denied. *Escamilla* does not support this conclusion.

■ The district court was not in clear error in finding that Babcock's testimony was connected to posttrial motions which were "reasonably related to the claims upon which plaintiffs were definitely successful." Again, we find no "clear abuse of discretion" on the part of the district court.

Similarly, no abuse of discretion underlies the district court's decision taxing long distance telephone calls and postage in the trial court and long distance calls on appeal. *Barth v. Bayou Candy Co.*, 379 F.Supp. 1201, 1205 (E.D. La. 1974) (Rubin, J.). These costs were not already included in the fee as a part of office "overhead." *See Cole v. Tuttle*, 462 F.Supp. 1016, 1020–21 (N.D. Miss. 1978), *cf. Johnson v. Mississippi*, 606 F.2d at 638 (avoid diluting the value of the fees award). We need not consider whether a contrary decision might also have been upheld. *Compare In re Nissan Antitrust Litigation*, 577 F.2d 910, 918 (5th Cir. 1978), *cert. denied sub nom. P.D.Q., Inc. v. Nissan Motor Corp. in U.S.A.*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979) *with Hodge v. Seiler*, 558 F.2d 284, 287 (5th Cir. 1977).

### III.

■ Carson argues that the trial court abused its discretion in ordering that the $7,506.71 fund remaining on deposit in the court's registry after payment of judgment for prior costs and fees, plus interest, remain in the registry to pay any further costs and fees which might be awarded. We conclude, however, that given the state's "unwillingness to comply," the district court had the power to create and hold the fund, and that under the circumstances, no abuse of discretion occurred. *Gates v. Collier*, 616 F.2d 1268, 1271 (5th Cir. 1980), *citing Hutto v. Finney*, 437 U.S. 678, 696, 98 S.Ct. 2565, 2576, 57 L.Ed.2d 522 (1978).

AFFIRMED.

---

3. Apportionment of attorneys' fee is appropriate when the plaintiff has brought several distinct causes of action, only some of which were successful. *Familias Unidas v. Briscoe*, 619 F.2d 391, 406 (5th Cir. 1980); *Hardy v. Porter*, 613 F.2d 112, 114 (5th Cir. 1980).

4. Carson does not dispute Miller's entitlement to $5,925 of the $17,407.50 award. This sum represents Miller's work between May 1, 1975 and July 17, 1975, the date of the permanent injunction. The attorneys' fee for services on the prior appeal was stipulated to and is not raised on this appeal.