James Humphrey CHAIRS,
et al., Plaintiffs,

v.

Buford BURGESS, et al., Defendants.

Civil Action No. 83–C–5137–NE.

United States District Court,
N.D. Alabama,
Northeastern Division.

Oct. 30, 1998.

## MEMORANDUM OF OPINION

CLEMON, District Judge.

This opinion addresses three issues: (1) whether the defendants Alabama State Department of Corrections ("DOC") and its Commissioner William Hopper ("the State") made "in good faith all reasonable efforts to comply" with the prior orders of this court requiring the timely transfer of sentenced state inmates from the Morgan County Jail, pursuant to the remand in *Chairs v. Burgess*, 143 F.3d 1432 (11th Cir.1998); (2) the State's recently filed Motion To Terminate, which

covers its earlier Motion To Modify the existing Consent Decree in this case; and (3) the pending motions for attorney's fees.

For the reasons which follow, the court concludes that the State did not make reasonable, good faith efforts to comply with the transfer provision of the consent decree, and that the court's prior finding and judgment of contempt were entirely appropriate when they were entered. The court further concludes that the attorneys for both the plaintiff class and Morgan County are entitled to reasonable attorney fees. Finally, the court finds that the State's Motion to Modify and its subsequent Motion To Terminate should be granted.

I.

More than fifteen years ago, on March 8, 1983, this case was initially filed *pro se* by James Humphrey Chairs, Bobby Wayne Fisher, Ralph Jones, Danny Wayne Oliver, and Marvin Walker Hopkins on behalf of themselves and similarly situated inmates of the Morgan County Jail. The complaint alleged overcrowding, lack of medicines and medical attention, lack of a grievance procedure, lack of a library, denial of religious freedom, unsanitary food, and a failure by the defendants Morgan County Sheriff, Morgan County Jail ("the County"), and the State to transfer inmates to state prisons following sentencing. The court appointed Robert Shipman to represent the putative class.

Over the next two years, counsel for the class pursued vigorous discovery. On November 23, 1985, the court certified the action for class treatment under F.R.Civ.P. 23. Nearly three years after the case was filed, the parties presented to the court a proposed Consent Decree, which was ultimately approved by the court on March 13, 1986.

The Consent Decree contains, among others, the following provisions:

D. The Defendant [Sheriff] shall...remove State prisoners from the Morgan County Jail to the Department of Corrections.... [T]he Department of Corrections...shall accept those inmates sentenced to imprisonment in the State Prison System within thirty days of receipt by said Department and Commissioner of the conviction and sentencing transcript for that transferred inmate....

E. An excessive number of prisoners shall not be housed within the Morgan County Jail....

(emphasis added).

Four years after the Consent Decree was approved, class counsel filed a motion seeking an evidentiary hearing on the defendants' compliance *vel non* with the decree. A hearing was conducted on October 29, 1990.[1] Based on the evidence, the court found the DOC Commissioner to be in contempt, and as a sanction, ordered him to pay over to the county defendants the sum of $40.00 per day for each state inmate housed in Morgan County Jail in violation of the Consent Decree.[2]

In August 1991, the County filed a motion asking that the State be held in contempt and that sanctions be imposed. The plaintiff class joined in that motion. Based on the motion, the court issued a Show Cause Order to the State on September 5, 1991.

The 1991 Show Cause hearing commenced on September 12, 1991. The State conceded that it had not complied with the transfer provision of the Consent Decree. Based on the evidence, the court found specifically that

the defendant MORRIS THIGPEN, as Commissioner of the Alabama State Department of Corrections, and others acting in concert with him, have repeatedly violated the Consent Decree previously entered herein by failing to remove sentenced inmates from the Morgan County Jail within thirty days after receiving the sentencing transcript....

"Defendant Commissioner of the Alabama State Department of Corrections believes he has a meritorious defense to an assessment of monetary damages against him in his official capacity, by the Eleventh Amendment to the United States Constitution." November 1, 1991, Motion to Reconsider, at 2.

---

1. The State did not appear at the hearing.

2. The court later set aside the order based on the State's failure to receive timely notice of the hearing. In urging that the Order be set aside, the State did not dispute that it had violated the Consent Decree; rather, its position was that

Order Granting Partial Relief, entered September 18, 1991. The court ordered the State to forthwith comply with the Consent Decree, and to pay a reasonable attorney fee to counsel for the County. *See id.*

The hearing resumed on October 25. Commissioner Morris Thigpen testified that he only became aware of the Consent Decree "fairly recently." Until that time, his records did not reflect that the Morgan County Jail was covered by a court decree. He had served as the prison's commissioner since February 1987. State's witness Charles R. Sutton, Associate Commissioner for Institutions, likewise became aware of the Consent Decree only shortly before the 1991 hearing. In the intervening five weeks since the Damocles sword of the court's September 18 order, the State brought itself into compliance with the Consent Decree.

Six years passed. On February 20, 1997, the County filed another motion, subsequently joined in by the plaintiff class, asking that the State be held in contempt and that appropriate sanctions be imposed. A month earlier, the County had written a letter to the State. In that letter, the County reminded the State of its obligation under the Consent Decree and the prior contempt proceedings, and listed the names of 40 inmates whose continued presence in the Morgan County Jail violated the Decree. The State never responded to the letter.

On March 3, 1997, the court issued another Show Cause Order, requiring the State to present itself on March 20, and show cause why it should not be held in contempt.

Two days before the scheduled hearing, the State filed a response to the Motion for Contempt and a Motion to Modify the Consent Decree. In its response, the State pointed out the number of inmates in the system and the number of inmates sentenced since 1986. The State asserted that it had made every effort to increase prison bed space, and that it had no control over the number of inmates sentenced to the state prison system. It argued that it had "made all reasonable efforts to comply with the consent order and should not be held in contempt." Defendants Hopper and Alabama Department of Corrections Response To Morgan County Defendants' Motion for Contempt, at 2. In its Motion to Modify, the State recited essential-ly the same statistics, and specifically requested "that the Consent Decree entered into on March 13,1986, be modified to change the thirty day requirement for removal to sixty days." Defendants Hopper and Alabama Department of Corrections Motion To Modify The Consent Decree, filed March 18, 1997, at 2. The other parties were understandably unprepared to go forward on the two-day old motion, for they had not received it when the hearing commenced on March 20.

Significantly, the State did not argue in either its March 18 response or its Motion to Modify that compliance with the transfer requirement of the Consent Decree would expose it to contempt citations in other cases requiring the timely removal of state prisoners from county jails.

The State's first witness at the Show Cause Hearing was Joseph Samuel Hopper, the present DOC Commissioner. Transcript of March 20, 1997, Hearing ("TR"), at 3. On direct examination, without objection Hopper testified to the number of court orders requiring him to remove prisoners from county jails. TR. 7, 8.

On cross examination by the County, Hopper testified that when he received the County's January 21 letter, he was not aware of the existence of the Consent Decree. TR. 11, lines 12–15. As of the time of his testimony, he had not reviewed the Consent Decree! TR. 12, lines 3–4. He acknowledged his duty to insure that the DOC complies with court orders. TR. 12, lines 24, 25; 13, lines 1, 2.

On cross examination by class counsel, Hopper testified that he is not familiar with the specific orders in any of the cases requiring the State to remove prisoners from county jails. TR. 20. He is unaware of any "framework" or "priority" for compliance with the various court orders. TR. 21.

On re-direct examination, counsel for the State asked Hopper an obviously leading question: "Based on the number of inmates that are being sentenced from county jails presently, can you comply with all the consent decrees and consent orders that the Department is presently under?" TR. 22, lines 22–25. Counsel for the County duly

objected, and pursuant to FRE 611(c), the objection was sustained. TR. 23, lines 1–3. Counsel for the State then sought to "just argue one little point on it." The court responded, "Not right now. We are going to finish up with the evidence first, then we will take argument." TR. 23, lines 4–6.[3] State counsel then proceeded to examine the witness. When the examination of Commissioner Hopper was completed:

> THE COURT: Other evidence for the State defendant?
>
> MS. LEONARD: We rest at this point, Your Honor.

TR. 26, lines 13–15. The County then called one witness, Sergeant Wayne Whisenaut, the Administrative Supervisor of the Morgan County Jail. The State called as a rebuttal witness, Linda Miller, who is employed in DOC's Transfer Division. She was not asked any questions concerning the ability of the State to simultaneously comply with the Consent Decree and court orders in other cases. TR. 50–55. On cross-examination, she testified that she is unaware of any priority in which the State seeks to comply with the various court orders concerning the removal of state prisoners from county jails. TR. 56.

At the conclusion of the evidence, the court found the defendant Commissioner to be in contempt.

---

3. Nonetheless, State counsel proceeded:

MS. LEONARD: Well, I think under the law, reasonable diligence and whether or not you can do—make an effort to not be in contempt is highly relevant.

THE COURT: Well, it seems to me that the inquiry this morning is, number one, whether the department has had knowledge of the court order; and number two, whether assuming that knowledge, it has complied with the court order.

Now there may be all kinds of reasons why it has not complied with it, but I assume that at all relevant times the department has been represented by counsel, and counsel knows, particularly after *Walker v. City of Birmingham*, that when you disagree with or are unable to comply with a court order, the thing to do is to obey it until it is changed. And if there is an inability to comply with the court order, it just seems to me that you cite me some authority to the contrary.

The appropriate thing to do is to come to court and ask to be relieved of the obligations of the court order, so this inquiry this morning, as far as I am concerned, is whether there has been compliance, because I have looked at the records, and the first motion for relief from the court order, which I am going to grant, has only been recently filed.

MS. LEONARD: Yes, sir. And I certainly take responsibility for that, because I have been counsel in this case since 1991.

THE COURT: So it may be a question whether you go to jail or the commissioner.

MS. LEONARD: And I prefer it to be me over him.

THE COURT: Well, no. Let's go ahead and finish with the evidence.

MS. LEONARD: Okay.

THE COURT: Then we will do the arguments, Ms. Leonard.

MS. LEONARD: The only other thing—

THE COURT: No. There is no other thing unless you don't have anything else with this witness.

MS. LEONARD: Yes, sir, I do.

THE COURT: Well, proceed with the examination of the witness.

MS. LEONARD: Can I ask if there needs to be more testimony after arguing the law, that could happen?

THE COURT: No. We are going to put on the evidence.

MS. LEONARD: Yes, sir.

THE COURT: You put on the evidence, and then have argument.

MS. LEONARD: Yes, sir.

THE COURT: All right.

## II.

On appeal of the contempt citation, a panel of the Court of Appeals held that this court precluded evidence of the State's asserted inability to comply with the Consent Decree. The panel wrote:

In this case, the State was allowed to put in some evidence to support its claim of inability. But, the State sought to offer other evidence showing that its compliance with the Decree could cause it to violate the orders of other courts. The district court, however, excluded this evidence and, instead, stated that it was limiting its inquiry to whether there was compliance with *this* Decree. On appeal, the State argues that the district court improperly excluded this evidence. We agree.... [E]vidence about whether, and to what extent, the State was unable to comply with the Decree in relation to the orders of other courts was material to the contempt determination. The district court erred to the extent that it precluded such evidence from being offered and considered.

*Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir.1998).

The court has reviewed the entire transcript of the Show Cause Hearing at least four times. It has enlisted the aid of State counsel in identifying the part of the transcript which reflects that such evidence was offered and excluded. The only transcript reference on which the State relies is the leading question put by it to its own witness. As noted earlier, the objection to that question was sustained, not on the basis of relevance, but rather on the sole basis of FRE 611.

In any event, consistent with the mandate, the court has conducted a remand hearing on the issue of inability to comply. Again, the court received all evidence offered by the State in a manner consistent with the Federal Rules of Evidence.

The court finds that the DOC has added 2600 beds to its existing facilities since 1994 to relieve the problem of overcrowding in Alabama prisons. State Exhibit ("SX") 4. No additional officers were hired, although the DOC was under no legal impediment to the hiring of new officers. SX 4. Various programs have been considered and implemented by the DOC to relieve overcrowding—e.g., expansion of the work release program, implementation of a Supervised Intensive Restitution and Prediscretionary Leave Program. The Alabama Legislature has not turned a deaf ear to DOC's requested general fund appropriations, providing roughly 90% of the requested appropriations over the last six years. SX 2.

At all relevant times in 1997, the DOC was subject to the 1992 preliminary injunction in *Barbour County, et al. v. Thigpen, et al.,* (CV–92–388–TH, Circuit Court of Montgomery County, Alabama), which restrains the Commissioner "from refusing to accept state inmates incarcerated in county jails in the State of Alabama in violation of Alabama Code § 14–3–30 (1982 Repl.Vol.)." There is no evidence that the State has ever been cited for contempt of this preliminary injunction.

As of March 1997, in separate actions involving twenty Alabama counties, federal courts had entered consent decrees or issued injunctions requiring the State to remove state inmates from county jails, usually within 30 days after completion of the sentencing transcript.[4] In twelve of those cases, the court orders/consent decrees predate the Consent Decree in this case. In six of those cases (Baldwin, Jefferson, Madison, Marshall, Mobile, and Tuscaloosa), show cause motions were filed and/or the district courts issued contempt citations between 1980 and 1991.[5] However, the underlying records do not reflect any pending motion to show cause in any of these cases since 1991.

The court finds that between 1991 and 1997, the imminency of contempt was more serious in this case than in any of the other

---

**4.** SX 1, a composite exhibit received into evidence on remand, reflects 29 such counties. The underlying documents, filed with the court on September 30, 1998, show that nine (9) of the counties (Chambers, DeKalb, Elmore, Escambia, Franklin, Lamar, Macon, Pickens and Russell) were not under a court order/consent decree to remove State prisoners from county jails within a period of thirty days or less.

**5.** In the case involving the Madison County Jail, the court declined to issue a contempt citation.

cases in which the State was under a court order to remove state-ready inmates from county jails.

Between 1994 and 1997, the inmate population at Kilby Correctional Center decreased by 71 inmates. SX 3. During the same period of time, the security staff increased by 13 persons. SX 3. The court finds that the State could have complied with its obligation under the Consent Decree by transferring the 32 state inmates from the Morgan County Jail to Kilby Correctional Center between the time that the County notified the State of its violation in January 1997 and the time that the Show Cause motion was filed a month later.[6] See Plaintiffs' Exhibit 1, March 20, 1997, hearing.

The State never considered petitioning the court to be relieved from its obligation under the Consent Decree until sometime after issuance of the Show Cause Order. Moreover, the State did not petition the other courts for relief from orders requiring the removal of state inmates within thirty days after sentencing.

The State never considered prioritizing its obligations under the various court orders.

There is no evidence that the State ever acted in good faith to comply with the Consent Decree before being haled into court by the plaintiffs and/or the County on a show cause motion.

### III.

The court has carefully considered the additional evidence offered at the remand hearing, and it has carefully reconsidered the evidence offered at the March 1997 Show Cause Hearing. Based on that evidence, the court concludes:

(1) that the County and the plaintiffs have proven by clear and convincing evidence that the State has violated the Consent Decree by failing to timely remove state inmates from the Morgan County Jail; and

(2) that the State has not proven an inability to comply with the Consent Decree. The State has simply not shown that it made all reasonable efforts to comply, nor has it shown that it acted with reasonable diligence

to seek relief from that Decree when it became difficult to comply with the terms of that Decree.

Far from making a reasonable effort to comply with the Consent Decree, the State has consistently acted as though the Decree did not exist. Indeed, five years after the entry of the Decree, the Commissioner Thigpen was in fact unaware of its existence. Eleven years after the entry of the Decree, Commissioner Hopper was blissfully unaware of its existence; *he had not even bothered to review it prior to his testimony at the 1997 Show Cause Hearing!*

■ Under these circumstances, it is at best disingenuous to argue that the State made a reasonable effort to comply with the Decree. On the implicit assumption that the other parties would not seek its enforcement, the State was content to ignore altogether its obligation under the Consent Decree. In the unlikely event that a party should insist that the State live up to its Consent Decree commitment, the State apparently reasoned that it could always moot the issue by simply bringing itself into compliance by the time of the Show Cause Hearing. The State's reasoning is flawed: "a party [has no] license to flout or willfully to disobey a court order by violating the order and then complying with the order before the contempt proceeding begins." *Mercer v. Mitchell,* 908 F.2d 763, 769 n. 10 (11th Cir.1990).

As found earlier, the State had the ability to comply with the Consent Decree in January 1997 when the County reminded it of its noncompliance. The inmate population of Kilby had been reduced; and the State has offered no justification for its failure to transfer the state prisoners to that facility until a few days before the Show Cause Hearing.

■ Assuming *arguendo* that the State encountered difficulties in efforts to comply with the Consent Decree, reasonable diligence would require that the State timely seek relief from the court. After all, a consent decree by definition is based on the *agreement* of the parties. If changed cir-

---

**6.** Had these inmates been transferred to Kilby in compliance with the Consent Decree, the State may well have determined that many of them qualified for placement in the work release program.

cumstances create an inability to comply with a consent decree, obviously a court should relieve the party of the obligation. But a court cannot assume that solely because a party has failed to comply with a court order, the party *ipso facto* is unable to do so. And the disabled party should not expect the court to make that assumption. For the law in these United States is that court orders—even defective ones—must be obeyed unless and until they are modified or dissolved by the issuing court, or reversed by a higher court. *See Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967).

In sum, the State has not shown any reasonable diligence in either seeking to comply with the Consent Decree, or in seeking relief from those aspects of the Decree with which it was allegedly unable to comply.

### IV.

The State's Motion to Modify the Consent Decree is subsumed in its September 1, 1998, Motion to Terminate Consent Decree Pursuant to The Prison Litigation Reform Act. No objections have been filed to the latter motion. It will therefore be granted, without prejudice to the right of the plaintiffs and the County to pursue their state law claims in *Barbour County, et al. v. Joe Hopper, et al.* (CV–92–388–TH; CV–92–399–TH).

### V.

Class counsel is entitled to a reasonable fee on two separate and independent grounds: (1) the plaintiff class is a "prevailing party," under the Civil Rights Attorneys' Fee Act, 42 U.S.C. § 1988; and (2) the State has willfully and consistently violated the Consent Decree since 1990, and the action of class counsel was necessary to enforce the decree.

Between 1990 and 1996, class counsel reasonably expended 55.8 hours in successful efforts to enforce the Consent Decree. He reasonably incurred $1,041.32 in expenses in 1991, and $243.32 in 1997–1998. In 1997 and up to the time of the remand hearing on September 18, 1998, he reasonably expended 82.2 hours in enforcement efforts. He is entitled to 3 hours for the September 28 proceedings. He seeks only $150 per hour for his services, a rate which borders on being unreasonable in view of his long experience and expertise in civil rights law.

Class counsel is entitled to a total of $22,434.64 as a reasonable attorney's fee and reimbursement of expenses.[7]

Counsel for the County is also entitled to a reasonable attorney's fee for his services in enforcing the Consent Decree. Based on his uncontroverted April 11, 1997,

---

**7.** The State takes the groundless position: "[a]s the DOC Defendants were not in willful contempt, there should be no awarding of attorney's fees. *Mercer; Newman."* Defendants Hopper and Alabama Department of Corrections Post Trial Brief, at 10. *Mercer* is inapposite, it simply does not address the issue. And *Newman v. Graddick,* basically emaciates the State's position:

The defendants concede that parties who have vindicated rights through a consent decree are considered to have prevailed for the purpose of the award of attorney fees. *Miller v. Carson,* 628 F.2d 346, 348 (5th Cir.1980). Their sole contention is that if the consent decree is set aside, they will not be entitled to an award of attorney's fees.

This court has not set aside the consent decree. Whether or not it is modified at some future time by the district court, the plaintiffs were the prevailing parties when it was entered, and a future modification would not make them less so. The order awarding attorney fees is affirmed.

740 F.2d 1513, 1519 (11th Cir.1984). Here, in addition to the court's finding of willful con-

tempt, class counsel has vindicated the right of the plaintiff class to enforcement of the Consent Decree.

It is unnecessary to address the State's argument that the attorney fee for class counsel is capped by the Prison Litigation Reform Act, 18 U.S.C. § 3626. First, the attorney fee limitation of that legislation does not apply retroactively. *Cooper v. Casey,* 97 F.3d 914, 921 (7th Cir.1996); *Jensen v. Clarke,* 94 F.3d 1191, 1201–03 (8th Cir.1996). For services rendered prior to the effective date of the Act, class counsel is entitled to both a higher hourly rate and an enhancement for delay in payment. These entitlements would more than offset the difference after the effective date of the Act, class counsel is entitled to both a higher hourly rate and an enhancement for delay in payment. Class counsel has expressly and, in the court's view, inexplicably waived both. These entitlements would more than offset the difference between the $150 hourly rate being hereby awarded for post-Act services and the $112 cap imposed by the Act. The State comes out ahead.

submission to the court, he is entitled to a total fee of $5,987.50 for services rendered and expenses incurred through April 10, 1997. Since he has not filed a claim for services rendered and/or expenses incurred after that date, the court assumes that he has waived such claim.

### Conclusion

By separate order, the court concludes that its earlier finding of contempt was appropriate when made; counsel for the class will be awarded the total sum of $22,434.64 as a reasonable attorney's fee and reimbursement of expenses; counsel for the County will be awarded the total sum of $5,987.50 as a reasonable attorney's fee and reimbursement of expenses, and this action will be dismissed.[8]

### FINAL JUDGMENT

Based on the accompanying Memorandum Opinion,

1. The March 20, 1997, Order adjudging the defendant ALABAMA STATE DEPARTMENT OF CORRECTIONS to be in willful violation of the Consent Decree, on consideration of all of the evidence, is hereby found to have been appropriate when entered.

2. ROBERT SHIPMAN, Esq., as class counsel, shall have and recover of the defendant ALABAMA STATE DEPARTMENT OF CORRECTIONS the sum of Twenty-Two Thousand Four Hundred Thirty-Four and 64/100 Dollars ($22,434.64) as a reasonable attorney's fee and reimbursement of expenses.

3. WILLIAM SHINN, JR., as counsel for the Morgan County defendants, shall have and recover of the defendants the sum of Five Thousand Nine Hundred Eighty-Seven and 50/100 Dollars ($5,987.50) as a reasonable attorney's fee and reimbursement of expenses.

4. The Consent Decree previously entered herein is hereby DISSOLVED and this action TERMINATED, without prejudice to the rights of the plaintiffs and the Morgan County defendants to pursue their state law claims in *Barbour County, et al. v. Joe Hop-*

*per, et al.*, (Circuit Court of Montgomery County, Alabama, CV–92–388–TH, CV–92–399–TH).

5. The costs of this action are hereby taxed against the defendants ALABAMA STATE DEPARTMENT OF CORRECTIONS and its Commissioner, WILLIAM HOPPER, in his official capacity.

---

8. In view of the dismissal of this action, it is unnecessary to consider the issues of sanctions and fine. See *Chairs,* 143 F.3d at 1435 n. 3; 1438 n. 12.